In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999–2000 # 227 and # 228

Nicholas K. Sarchet, Christine M. Scardina, Suzanne M. Banning, Michael J. Smith, and Peter Gross, Registered Electors of the State of Colorado, Petitioners,

v.

William Hobbs, Michael McLachlan, and Charles Pike, Title Board, and Gary Rogers and Sharon Hindman, Respondents.

Nos. 00SA9, 00SA23.

Supreme Court of Colorado,
En Banc.

April 10, 2000.

Rehearing Denied May 1, 2000.

Isaacson, Rosenbaum, Woods & Levy, P.C., Mark Grueskin, Melissa K. Thompson, Denver, Colorado, Attorneys for Petitioners.

King, Peterson, Dymond LLP, Candace McCune, Denver, Colorado, Attorney for Respondents.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Alan J. Gilbert, Solicitor General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, Colorado, Attorneys for Title Board.

Justice HOBBS delivered the Opinion of the Court.

This is an original proceeding brought pursuant to section 1–40–107(2), 1 C.R.S. (1999). Nicholas K. Sarchet, Christine M. Scardina, Suzanne M. Banning, Michael J. Smith, and Peter Gross (Sarchet) are registered Colorado electors who challenge the action of the Title Setting Board (Title Board) in adopting titles, ballot title and submission clauses, and summaries (titles and summaries) for constitutional amendments designated "1999–2000 # 227" and "1999–2000 # 228" (Initiatives # 227 and # 228) proposed by Gary Rogers and Sharon Hindman (Rogers).[1] Initiatives # 227 and # 228, if adopted by the voters, would specify that a marriage must be between a man and a woman to be recognized as valid in Colorado. Affirming the Title Board's action, we hold that: (1) Initiatives

---

1. The texts of the initiatives as well as the titles and summaries prepared by the Title Board are appended to this opinion.

# 227 and # 228 do not contain more than one subject; (2) the titles and summaries are not misleading, unfair, and inaccurate; and (3) the titles and summaries do not contain an impermissible catch phrase.

## I.

Initiatives # 227 and # 228 would add a new section entitled "Marriages – recognized as valid," to article II of the Colorado Constitution. They provide that a marriage shall be recognized in Colorado as valid if it is between a man and a woman and is: (1) a valid common-law marriage; (2) a licensed, solemnized, and registered marriage according to statutory provisions; or (3) a marriage validly contracted in a foreign jurisdiction. Each initiative states that its purpose is to "preserve the unique social institution of marriage as being between a man and a woman." The initiatives would also require the General Assembly to enact an affidavit process by which individuals must affirm that their marriage is between a man and a woman, and the initiatives direct the General Assembly to prescribe suitable penalties for violation of the affidavit process.

Initiatives # 227 and # 228 are virtually identical. The primary difference is that Initiative # 228 defines "man" and "woman" and Initiative # 227 does not. The terms are defined in Initiative # 228 as "a biological [male or female] as determined by standard medical procedures using genetics and other physical criteria." Initiative # 227 specifies that any marriage solemnized outside of Colorado shall not be recognized as valid in Colorado if it is not between a man and a woman.

Rogers filed Initiative # 227 on December 3, 1999. On December 15, 1999, the Title Board held a hearing and set the titles and summary. Sarchet filed a motion for rehearing on December 22, 1999 which the Title Board denied on January 5, 2000. Sarchet then filed a petition for review with us on January 12, 2000.

Rogers filed Initiative # 228 on December 17, 1999. The Title Board, after a hearing, set the titles and summary on January 5, 2000. Sarchet filed a motion for rehearing on January 12, 2000 which the Title Board denied on January 19, 2000. On January 26, 2000, Sarchet filed a petition for review with us.

Sarchet argues that Initiatives # 227 and # 228 violate the single-subject requirement by creating a constitutional status for the institution of common-law marriage. Sarchet also contends that the titles and summaries are misleading, unfair, and inaccurate because they limit applicability of the affidavit requirement to marriage license applicants only and, thus, fail to notify voters that the legal standards for common-law marriage are being changed. Finally, Sarchet alleges that Initiatives # 227 and # 228 contain an impermissible catch phrase that is likely to prejudice voters.

The Title Board and Rogers respond that the provisions regarding common-law marriage do not constitute a separate and unconnected subject; instead, they argue that they are directly related to the central focus of the initiative—that to be recognized in Colorado a marriage must be between a man and a woman. They also contend that the titles and summaries are fair, correct, and objective, they do not contain a prohibited catch phrase, and the affidavit requirement only applies to applicants for a marriage license in Colorado.

## II.

Affirming the action of the Title Board, we hold that: (1) Initiatives # 227 and # 228 do not contravene the single-subject requirement of article V, section 1(5.5) and section 1–40–106.5, 1 C.R.S. (1999); (2) the titles and summaries correctly and fairly express the true intent and meaning of the proposed constitutional amendments in conformance with section 1–40–106(3), 1 C.R.S. (1999); and (3) the titles and summaries do not contain an impermissible catch phrase contrary to section 1–40–106(3)(a).

### A. Single–Subject Requirement

#### 1. Standard of Review

By article V, section 1 of the Colorado Constitution, the citizens have reserved to themselves the power to propose laws and

amendments to the constitution. Subsection 5.5 sets forth the single-subject requirement for initiatives. It provides:

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

Colo. Const. art. V, § 1(5.5).

 The single-subject requirement is designed to: (1) prevent joining in the same measure subjects having no necessary or proper connection; and (2) protect the voters from surprise and fraud. *See* § 1–40–106.5(e). An initiative that tends to effect or carry out one general object or purpose satisfies the single-subject requirement. *See In re 1999–2000 # 200A*, 992 P.2d 27, 31 (Colo. 2000); *In re Proposed Initiative "Public Rights in Waters II"*, 898 P.2d 1076, 1079 (Colo.1995). A proposal that has at least two distinct and separate purposes that are not dependent upon or connected with each other violates the single-subject requirement. *See In re 1999–2000 # 200A*, 992 P.2d at 30; *In re 1999–2000 # 104*, 987 P.2d 249, 253 (Colo.1999). An initiative does not violate the single-subject requirement if the matters encompassed are necessarily or properly connected to each other rather than disconnected and incongruous. *See In re Proposed Ballot Initiative on Parental Rights*, 913 P.2d 1127, 1131 (Colo.1996).

 Our single-subject review of the titles and summaries is limited. *See In re 1999–2000 # 200A*, 992 P.2d at 30. We do not address the merits of proposed initiatives, nor do we interpret the meaning of language contained therein. *See id.; Initiative on Parental Rights*, 913 P.2d at 1131. The principal object in single-subject review is to "preserve and protect the right of initiative and referendum." § 1–40–106.5(2).

### 2. Definition of Marriage

 In his petition for rehearing, Sarchet argued that Initiatives # 227 and # 228 contain separate subjects because they create a constitutional status for the institution of common-law marriage. Sarchet contends that, by establishing common-law marriage in Colorado's constitution, the initiatives would prevent the alteration or abolition of the doctrine by future legislative or judicial action. According to Sarchet, such constitutional status is an additional subject unrelated to the requirements for a valid marriage in Colorado, the initiatives' purported subject. We disagree.

Under Initiatives # 227 and .# 228, a marriage must be between a man and a woman in order to be recognized in Colorado. The definition of marriage for this purpose includes valid common-law marriages, validly licensed marriages, and valid foreign-jurisdiction marriages. Neither initiative defines, limits, or otherwise alters the doctrine of common-law marriage in Colorado. Nor does either initiative provide that the legislature must recognize the doctrine or that the doctrine cannot be modified or abolished by legislative or judicial action.

We hold that Initiatives # 227 and # 228 do not contain two distinct and separate subjects. The reference to common-law marriage is descriptive of the forms of marriage now recognized in Colorado. The initiatives change the different forms of marriage by adding a requirement that the marriage must be between a man and a woman. The other elements are left untouched and are determined by statute or common law. Initiatives # 227 and # 228 do not combine unrelated, incongruous subjects in an effort to defraud the public and cause voters to inadvertently adopt measures they do not support in the process of voting for measures they do support. *See In re Proposed Initiative Bingo–Raffle Licensees (II)*, 915 P.2d 1320, 1325 (Colo.1996) (holding that none of the initiatives' provisions related to a subject other than gaming activities conducted by nonprofit organizations). The inclusion of common-law marriage as a form of marriage currently recognized in Colorado furthers the single

purpose of Initiatives # 227 and # 228 of defining marriage as being between a man and a woman. In requiring a common-law marriage to comply with this definition, the proposed initiatives do not create a separate subject.

### B. Clear and Accurate Title and Summaries

#### 1. Standard of Review

■ Section 1–40–106(3)(b) provides guidance to the Title Board in setting titles for proposed initiatives. It states:

> In setting a title, the title board shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a "yes" or "no" vote will be unclear. The title for the proposed law or constitutional amendment, which shall correctly and fairly express the true intent and meaning thereof, together with the ballot title, submission clause, and summary, shall be completed within two weeks after the first meeting of the title board.... Ballot titles shall be brief, shall not conflict with those selected for any petition previously filed for the same election, and shall be in the form of a question which may be answered "yes" (to vote in favor of the proposed law or constitutional amendment) or "no" (to vote against the proposed law or constitutional amendment) and which shall unambiguously state the principle of the provision sought to be added, amended, or repealed.

§ 1–40–106(3)(b). Similarly, the Title Board must prepare a clear, concise summary of the proposed law or constitutional amendment. See § 1–40–106(3)(a). The summary must be true and impartial, and must not be an argument either for or against the measure. See id. "If the chosen language fairly summarizes the intent and meaning of the proposed amendment, without arguing for or against its adoption, it is sufficient." In re Initiative Concerning Unsafe Workplace Env't, 830 P.2d 1031, 1035 (Colo.1992).

■ Our role in reviewing the titles and summaries set by the Title Board is narrow. We will not address the merits of the proposed initiatives, interpret their language, or suggest how they will be applied if adopted by the electorate. See In re 1999–2000 # 104, 987 P.2d at 254; In re # 25A Concerning Hous. Unit Constr. Limits, 954 P.2d 1063, 1065 (Colo.1998). We resolve all legitimate presumptions in favor of the Title Board and will not interfere with its choice of language if that language is not clearly misleading. See id.

■ In determining how to describe the true intent and meaning of the proposal, the Title Board may consider statements made by the proponent in the course of the administrative proceeding. See In re Proposed Initiative on Water Rights, 877 P.2d 321, 327 (Colo.1994); Initiative Concerning Unsafe Workplace Env't, 830 P.2d at 1034. The proponent of the measure best understands the reasons for initiating the change or addition to the constitution or statutes. See Initiative Concerning Unsafe Workplace Env't, 830 P.2d at 1034. In considering the proponent's intent, the Title Board must not neglect its duty to consider and address public confusion that might result from misleading titles. See In re 1999–2000 # 25, 974 P.2d 458, 465 (Colo.1999).

#### 2. The Affidavit Requirement

■ Sarchet argues that the titles and summaries are misleading, unfair, inaccurate, and thus, fail to express the true intent and meaning of Initiatives # 227 and # 228. Sarchet contends that the Title Board's language regarding the affidavit process directly contradicts the language of the initiatives and that the initiatives require couples in valid common-law marriages to file affidavits certifying their sex.

Initiatives # 227 and # 228 provide that a marriage will be recognized as valid in Colorado only if it is between a man and a woman and: (1) the two individuals meet the established requirements for common-law marriage; (2) the marriage is licensed, solemnized, and registered according to statutory provisions; or (3) the marriage is validly contracted in a foreign jurisdiction. The initiatives specify that the individuals must file affidavits with the county clerk affirming that

they are a man and a woman. The Title Board's titles and summaries limit the affidavit requirement to the second form of marriage by describing the initiatives as "[r]equiring the General Assembly to provide by law an affidavit process *to be used by applicants for a marriage license* to affirm to the county clerk that the applicants be a man and a woman." (Emphasis added.)

Sarchet disagrees that Initiatives # 227 and # 228 limit the affidavit requirement to marriage license applicants only. Sarchet claims that the initiatives clearly require individuals to a common-law marriage to file an affidavit affirming their gender and, thus, the initiatives create a new and controversial standard regarding common-law marriage that the Title Board omits from the titles and summaries. We disagree.

Section 1–40–106(3) directs the Title Board to set a title that expresses the true intent and meaning of the initiative and prepare a summary that is clear and concise. In its proceeding, the Title Board examined whether Initiatives # 227 and # 228 would make the affidavit process applicable to all forms of valid marriages or to licensed marriages only. The Title Board observed that: (1) Initiatives # 227 and # 228 specify that the affidavit process is to be implemented through the county clerk's office; and (2) common-law marriages and foreign jurisdiction marriages are not registered with the county clerk's office. It then reasoned that the proponents may not have intended to impose the affidavit requirement on validly recognized common-law and foreign jurisdiction marriages.

In order to determine the initiatives' true intent and meaning, the Title Board turned to the testimony of the proponents. One of Rogers's witnesses stated to the Title Board that:

[T]he reason why we put the affidavit portion in was because Legislative Council Legal Services suggested that we do so.... [S]pecifically, it was addressing those who came in for a marriage license.... [I]t has nothing to do with

common-law marriages having to — to fill out an affidavit, sign an affidavit.

Rogers's counsel agreed:

The only reason they are going to the county clerk is to get a license. The only people that go to get a license are the ones that are going to follow the statutory requirements for a marriage. People who are doing a common-law marriage are not needing a procedure like this; they are not going to get a procedure like this; they are not in there, into the county clerk's office, asking for an affidavit or asking for a license.

So it is not saying that everyone who is getting married must go through the affidavit procedure. It is simply saying, the General Assembly shall provide a procedure for those who come to the county clerk and want to go through the licensing procedure where they will verify whether they are a man and a woman.

Based on the Title Board's examination of this issue and support in the record, we determine that the Title Board correctly limited the scope of the affidavit requirement consistent with Rogers's intent, by specifying in the titles and summaries that this aspect of Initiatives # 227 and # 228 applies only to applicants for a marriage license in Colorado.

We conclude that the Title Board's language regarding the affidavit process fairly summarizes the true intent and meaning of the proposed initiatives without arguing for or against their adoption, in accordance with section 1–40–106(3), and will not mislead the voters. The titles and summaries clearly and concisely state the proposal, and they do not contradict the language of Initiatives # 227 and # 228.

### C. Catch Phrase

#### 1. Standard of Review

A "catch phrase" consists of "words which could form the basis of a slogan for use by those who expect to carry out a campaign for or against an initiated constitutional amendment." *In re 1997–1998 # 105 (Payments by Conservation Dist. to Pub. Sch. Fund and Sch. Dists.),* 961 P.2d 1092, 1100 (Colo.1998); *In re No. 26 Concerning*

*Sch. Impact Fees*, 954 P.2d 586, 593 (Colo. 1998). The Title Board's inclusion of a catch phrase in a title and summary may create prejudice for the proposal in violation of section 1–40–106(3)(a) and is therefore prohibited. *See In re Sch. Impact Fees*, 954 P.2d at 592.[2] We determine the existence of a catch phrase in the context of contemporary political debate. *See In re 1997–1998 # 105*, 961 P.2d at 1100; *In re Sch. Impact Fees*, 954 P.2d at 593.

We have held that petitioners must offer evidence that the summary contains an impermissible catch slogan beyond the "bare assertion that political disagreement currently exists over" the challenged phrase. *In re Tabor No. 32*, 908 P.2d 125, 130 (Colo.1995). For example, in *In re 1997–1998 # 105*, 961 P.2d at 1100, we held that the petitioners failed to provide any convincing evidence that "refund to taxpayers" constituted a catch phrase. We stated that "we must be careful to recognize, but not create, catch phrases." *Id.; see also In re Sch. Impact Fees*, 954 P.2d at 593 (holding that bare assertion that "school impact fees" are commonly understood not to be a tax on the general population did not establish that "school impact fees" constituted a prohibited catch phrase); *In re Proposed Initiative "1996–6"*, 917 P.2d 1277, 1281 (Colo.1996)(concluding that petitioners did not provide any evidence that "public's interests in state waters" constituted a catch phrase).

#### 2. *"Social Institution of Marriage"*

▪ Sarchet argues that the phrase "to preserve ... the social institution of marriage" contained in the titles and summaries set by the Title Board for Initiatives # 227 and # 228 constitutes an impermissible catch phrase. The summaries for Initiatives # 227 and # 228 state: "The measure amends the Colorado constitution by expressing the choice of the people of Colorado *to preserve,* as a matter of public policy, *the social institution of marriage* as being between a man and a woman." (Emphasis added.) The ti-tles·and submission clauses also include the phrase "social institution of marriage."

Specifically, Sarchet claims that the phrase is frequently utilized in public debate and is likely to be used by proponents as the basis for a slogan. Beyond these blanket assertions, Sarchet provides no showing that the phrase "to preserve ... the social institution of marriage" is a prohibited catch phrase. We determine that the phrase fairly and adequately reflects the intent of Initiatives # 227 and # 228. The articulated purpose of these initiatives is to preserve the traditional societal notion of marriage as existing between a man and a woman. We do not agree that the use of the challenged phrase impermissibly creates prejudice for passage of the proposed initiatives in violation of section 1–40–106(3)(a). We therefore conclude that the titles and summaries do not contain a prohibited catch phrase.

### III.

Accordingly, we affirm the action of the Title Board in setting the titles and summaries for Initiative 1999–2000 # 227 and Initiative 1999–2000 # 228.

### *APPENDIX*

#### Proposed Initiative "1999–2000 # 227"[1]

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING THE CRITERIA FOR VALID MARRIAGES IN COLORADO, AND, IN CONNECTION THEREWITH, EXPRESSING THE PUBLIC POLICY OF THE STATE OF COLORADO THAT THE SOCIAL INSTITUTION OF MARRIAGE BE BETWEEN A MAN AND A WOMAN; SPECIFYING THAT A MARRIAGE SHALL BE RECOGNIZED AS VALID IN COLORADO ONLY IF IT IS BETWEEN A MAN AND A WOMAN AND ONLY IF IT MEETS THE

---

2. Section 1–40–106(3)(a) provides in relevant part:

> The summary shall be true and impartial and shall not be an argument, nor likely to create prejudice, either for or against the measure.

1. Marriage to be Recognized as Valid

ESTABLISHED REQUIREMENTS FOR A VALID COMMON LAW MARRIAGE OR IS LICENSED, SOLEMNIZED, AND REGISTERED ACCORDING TO STATUTORY PROVISIONS OR IS VALIDLY CONTRACTED AS A MARRIAGE IN A FOREIGN JURISDICTION; REQUIRING THE GENERAL ASSEMBLY TO PROVIDE BY LAW AN AFFIDAVIT PROCESS TO BE USED BY APPLICANTS FOR A MARRIAGE LICENSE TO AFFIRM TO THE COUNTY CLERK THAT THE APPLICANTS ARE A MAN AND A WOMAN; REQUIRING THE GENERAL ASSEMBLY TO PRESCRIBE SUITABLE PENALTIES FOR THE VIOLATION OF THE AFFIDAVIT PROCESS; AND REQUIRING THE GENERAL ASSEMBLY TO PROVIDE BY LAW THAT A RECORD OF THE AFFIDAVITS BE MAINTAINED.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING THE CRITERIA FOR VALID MARRIAGES IN COLORADO, AND, IN CONNECTION THEREWITH, EXPRESSING THE PUBLIC POLICY OF THE STATE OF COLORADO THAT THE SOCIAL INSTITUTION OF MARRIAGE BE BETWEEN A MAN AND A WOMAN; SPECIFYING THAT A MARRIAGE SHALL BE RECOGNIZED AS VALID IN COLORADO ONLY IF IT IS BETWEEN A MAN AND A WOMAN AND ONLY IF IT MEETS THE ESTABLISHED REQUIREMENTS FOR A VALID COMMON LAW MARRIAGE OR IS LICENSED, SOLEMNIZED, AND REGISTERED ACCORDING TO STATUTORY PROVISIONS OR IS VALIDLY CONTRACTED AS A MARRIAGE IN A FOREIGN JURISDICTION; REQUIRING THE GENERAL ASSEMBLY TO PROVIDE BY LAW AN AFFIDAVIT PROCESS TO BE USED BY APPLICANTS FOR A MARRIAGE LICENSE TO AFFIRM TO THE COUNTY CLERK THAT THE APPLICANTS ARE A MAN AND A WOMAN; REQUIRING THE

GENERAL ASSEMBLY TO PRESCRIBE SUITABLE PENALTIES FOR THE VIOLATION OF THE AFFIDAVIT PROCESS; AND REQUIRING THE GENERAL ASSEMBLY TO PROVIDE BY LAW THAT A RECORD OF THE AFFIDAVITS BE MAINTAINED?

The summary prepared by the Board is as follows:

The measure amends the Colorado constitution by expressing the choice of the people of the state of Colorado to preserve, as a matter of public policy, the social institution of marriage as being between a man and a woman. The measure specifies that a marriage shall be recognized as valid in Colorado only if it is between a man and a woman and only if it meets the established requirements for a valid common law marriage, or is licensed, solemnized, and registered according to statutory provisions or is validly contracted as a marriage in a foreign jurisdiction. The measure states that any marriage solemnized within Colorado or outside of Colorado that does not meet these requirements shall not be recognized as valid in or by this state.

The measure requires the general assembly to provide by law during its session immediately following the passage of the constitutional amendment an affidavit process to be used by the marriage license applicants in order to affirm to the county clerk that the applicants for the marriage license are a man and a woman. The measure directs the general assembly to prescribe suitable penalties for the violation of the affidavit process. The measure requires the general assembly to provide by law that a record of the affidavit shall be maintained.

The measure specifies that the constitutional change shall take effect upon proclamation of the vote by the governor.

The Office of Planning and Budgeting anticipates that most likely the measure would not create any fiscal impact to the state and that any revenues generated by the collection of fees by the counties to offset the costs of the affidavit procedure would remain with the counties and therefore would not be passed on to the state.

The Department of Local Affairs does not foresee any fiscal impact on local governments resulting from the enactment of the measure.

Hearing December 15, 1999:

Single subject approved; staff draft amended; titles and summary set.

Hearing adjourned 4:49 p.m.

Rehearing January 5, 2000:

Motion for rehearing denied.

Hearing adjourned 5:59 p.m.

The text of Initiative # 227 is as follows:

Be it Enacted by the People of the State of Colorado:

Section 1: Article II of the Colorado constitution is amended BY THE ADDITION OF A NEW SECTION to read:

**Section 31. Marriages – recognized as valid.** (1) As a matter of public policy the people of the state of Colorado choose to preserve the unique social institution of marriage as being between a man and a woman. A marriage shall be recognized as valid in Colorado only if:

(a)(I) It meets the requirements for a valid common law marriage; or

(II) It is licensed, solemnized, and registered according to statutory provisions; or

(III) It is validly contracted as a marriage in a foreign jurisdiction; and

(b) The marriage is between a man and a woman only.

(2) The general assembly shall provide by law in the legislative session immediately following passage of this section on the 2000 election day, and prescribe suitable penalties for the violation thereof, a procedure by which the condition specified in subsection (1)(b) of this section shall be affirmed to the county clerk by affidavit and a record thereof maintained.

(3) Not withstanding any other provision to the contrary, any marriage solemnized within Colorado or outside that does not satisfy subsection (1) of this section shall not be recognized as valid in or by this state.

Section 2: This section shall take effect upon proclamation of the vote by the governor.

**Proposed Initiative "1999–2000 # 228"[1]**

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING THE CRITERIA FOR VALID MARRIAGES IN COLORADO, AND, IN CONNECTION THEREWITH, EXPRESSING THE PUBLIC POLICY OF THE STATE OF COLORADO THAT THE SOCIAL INSTITUTION OF MARRIAGE BE BETWEEN A MAN AND A WOMAN; SPECIFYING THAT A MARRIAGE SHALL BE RECOGNIZED AS VALID IN COLORADO ONLY IF IT IS BETWEEN A MAN AND A WOMAN AND ONLY IF IT MEETS THE REQUIREMENTS FOR A VALID COMMON LAW MARRIAGE OR IS LICENSED, SOLEMNIZED, AND REGISTERED ACCORDING TO STATUTORY PROVISIONS OR IS VALIDLY CONTRACTED AS A MARRIAGE IN A FOREIGN JURISDICTION; REQUIRING THE GENERAL ASSEMBLY TO PROVIDE BY LAW AN AFFIDAVIT PROCESS TO BE USED BY APPLICANTS FOR A MARRIAGE LICENSE TO AFFIRM TO THE COUNTY CLERK AND RECORDER THAT THE APPLICANTS ARE A MAN AND A WOMAN; REQUIRING THE GENERAL ASSEMBLY TO PRESCRIBE SUITABLE PENALTIES FOR THE VIOLATION OF THE AFFIDAVIT PROCESS; REQUIRING THE GENERAL ASSEMBLY TO PROVIDE BY LAW THAT A RECORD OF THE AFFIDAVITS BE MAINTAINED; AND DEFINING THE TERMS "MAN" AND "WOMAN" BIOLOGICALLY AS DETERMINED BY STANDARD MEDICAL PROCEDURES USING GENETICS AND OTHER PHYSICAL CRITERIA.

The ballot title and submission clause as designated and fixed by the Board is as follows:

1. Marriages to be Recognized as Valid

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING THE CRITERIA FOR VALID MARRIAGES IN COLORADO, AND, IN CONNECTION THEREWITH, EXPRESSING THE PUBLIC POLICY OF THE STATE OF COLORADO THAT THE SOCIAL INSTITUTION OF MARRIAGE BE BETWEEN A MAN AND A WOMAN; SPECIFYING THAT A MARRIAGE SHALL BE RECOGNIZED AS VALID IN COLORADO ONLY IF IT IS BETWEEN A MAN AND A WOMAN AND ONLY IF IT MEETS THE REQUIREMENTS FOR A VALID COMMON LAW MARRIAGE OR IS LICENSED, SOLEMNIZED, AND REGISTERED ACCORDING TO STATUTORY PROVISIONS OR IS VALIDLY CONTRACTED AS A MARRIAGE IN A FOREIGN JURISDICTION; REQUIRING THE GENERAL ASSEMBLY TO PROVIDE BY LAW AN AFFIDAVIT PROCESS TO BE USED BY APPLICANTS FOR A MARRIAGE LICENSE TO AFFIRM TO THE COUNTY CLERK AND RECORDER THAT THE APPLICANTS ARE A MAN AND A WOMAN; REQUIRING THE GENERAL ASSEMBLY TO PRESCRIBE SUITABLE PENALTIES FOR THE VIOLATION OF THE AFFIDAVIT PROCESS; REQUIRING THE GENERAL ASSEMBLY TO PROVIDE BY LAW THAT A RECORD OF THE AFFIDAVITS BE MAINTAINED; AND DEFINING THE TERMS "MAN" AND "WOMAN" BIOLOGICALLY AS DETERMINED BY STANDARD MEDICAL PROCEDURES USING GENETICS AND OTHER PHYSICAL CRITERIA?

The summary prepared by the Board is as follows:

The measure amends the Colorado constitution by expressing the choice of the people of the state of Colorado to preserve, as a matter of public policy, the social institution of marriage as being between a man and a woman. The measure specifies that a marriage shall be recognized as valid in Colorado only if it is between a man and a woman and only if it meets the established requirements for a valid common law marriage or is licensed, solemnized, and registered according to statutory provisions or is validly contracted as a marriage in a foreign jurisdiction. The measure defines the terms "man" and "woman" as a biological male or female as determined by standard medical procedures using genetics and other physical criteria.

The measure requires the general assembly to provide by law in the legislative session immediately following the passage of the constitutional amendment on the 2000 election day an affidavit process to be used by the marriage license applicants in order to affirm to the county clerk and recorder that the applicants for the marriage license are a man and a woman. The measure directs the general assembly to prescribe suitable penalties for the violation of the affidavit process. The measure requires the general assembly to provide by law that a record of the affidavit shall be maintained.

The measure specifies that the constitutional change shall take effect upon proclamation of the vote by the governor.

The Office of State Planning and Budgeting anticipates that most likely the measure would not create any fiscal impact to the state and that any revenues generated by the collection of fees by the counties to offset the costs of the affidavit procedure would remain with the counties and therefore would not be passed on to the state.

The Department of Local Affairs does not foresee any fiscal impact on local governments resulting from the enactment of the measure.

Hearing January 5, 2000:

Single subject approved; staff draft amended; titles and summary set.

Hearing adjourned 6:13 p.m.

Rehearing January 19, 2000:

Motion for rehearing denied.

Hearing adjourned 2:19 p.m.

The text of Initiative # 228 is as follows:

Be it Enacted by the People of the State of Colorado:

Section 1: Article II of the Colorado constitution is amended BY THE ADDITION OF A NEW SECTION to read:

**Section 31. Marriages – recognized as valid.** (1) As used in this section:

(a) "Man" means a biological male as determined by standard medical procedures using genetics and other physical criteria.

(b) "Woman" means a biological female as determined by standard medical procedures using genetics and other physical criteria.

(2) As a matter of public policy the people of the state of Colorado choose to preserve the unique social institution of marriage as being between a man and a woman. A marriage shall be recognized as valid in Colorado only if:

 (a)(I) It meets the requirements for a valid common law marriage; or

 (II) It is licensed, solemnized, and registered according to statutory provisions; or

 (III) It is validly contracted as a marriage in a foreign jurisdiction; and

 (b) The marriage is between a man and a woman only.

(3) The general assembly shall provide by law in the legislative session immediately following passage of this section on the 2000 election day, and prescribe suitable penalties for the violation thereof, a procedure by which the condition specified in subsection (2)(b) of this section shall be affirmed to the county clerk and recorder by affidavit and a record thereof maintained.

Section 2: This section shall take effect upon proclamation of the vote by the governor.