4 P.3d 1094 (2000)
In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999-2000 # 258(A) (English Language Education in Public Schools),
Jorge L. Garcia and Susan Marie Pacheco, Petitioners,
v.
Joe F. Chavez, Charles F. King, and Tom Tancredo, Respondents, and
William Hobbs, Alan J. Gilbert, and Charles W. Pike, Title Board.
No. 00SA163.
Supreme Court of Colorado, En Banc.
July 10, 2000.
*1096 Isaacson, Rosenbaum, Woods & Levy, P.C. Edward T. Ramey, Mark G. Grueskin, Denver, Colorado, Lorenzo A. Trujillo, Westminster, Colorado, Attorneys for Petitioners.
Hall & Evans, L.L.C., Alan Epstein, Hugo Teufel, Denver, Colorado, Attorneys for Respondents.
Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Alan J. Gilbert, Solicitor General, Maurice G. Knaizer, Deputy Attorney General, State Services Section Denver, Colorado, Attorneys for Title Board.
Justice HOBBS delivered the Opinion of the Court.
Two registered electors, Jorge L. Garcia and Susan Marie Pacheco (collectively, Garcia) challenge the action of the Title Board in setting the title and ballot title and submission clause (titles) and summary for Initiative 1999-2000 # 258(A), an "Amendment of the Colorado Constitution for English Education" (Initiative # 258(A)).[1] Garcia claims that Initiative # 258(A) contains more than one subject, and that the titles and summary prepared by the Board are unclear and misleading and employ a prohibited catch phrase.[2] We determine that: (1) the initiative *1097 contains only one subject; but (2) the titles and summary are unclear and misleading regarding a principal feature of the proposed constitutional amendment; and (3) the titles and summary employ a prohibited catch phrase. Consequently, we reverse the action of the Title Board.

I.
The Title Board set the titles and summary for Initiative # 258(A) at its hearing of April 19, 2000. On May 3, 2000, it granted Garcia's petition for rehearing in part. Garcia filed this original proceeding with us on May 8, 2000, pursuant to section 1-40-107(2), 1 C.R.S. (1999).
Initiative # 258(A) proposes a constitutional amendment that would require all public school students in Colorado to be taught in English. Students whose primary language is other than English would be taught through an English immersion program designed to teach English and academic subjects at a level appropriate to the proficiency of the class of those whose primary language is other than English.
The English immersion program for each student is to be temporary, not normally to exceed one year, after which the student would join the standard classroom of native English speakers and those who have acquired enough fluency in English to participate without additional accommodations. Teachers and instructional aides may use languages other than English to assist students by translating and clarifying.
Foreign language teaching to English speakers is exempted from the English instruction directive, but a student whose primary language is other than English may not participate in any foreign language programs for more than one class period per day without a parental waiver.
The parental waiver exception allows parents to opt children out of the English immersion program and transfer them into a bilingual program at the same school or another school, if a bilingual program is available.
Initiative # 258(A) prohibits a school district or school from being required to provide a bilingual program. It provides a cause of action for enforcement of its provisions. If approved by the voters, Initiative # 258(A) would take effect upon proclamation by the Governor and would apply to the public schools in school districts with school terms that begin more than sixty days after the date of the Governor's proclamation.

II.
We hold that Initiative # 258(A) does not contain more than one subject. We also hold that the titles and summary are unclear and misleading regarding a principal feature of the proposed constitutional amendment, and that they employ a prohibited catch phrase. Consequently, we reverse the action of the Title Board.

A. Standard of Review
Colorado's Constitution and statutes prohibit the Title Board from setting the titles and summary for an initiative containing more than one subject that cannot be clearly expressed in the titles. See Colo. Const. art. V, section 1(5.5); § 1-40-106.5(3), 1 C.R.S. (1999). Accordingly, we make two closely interdependent inquiries: one commanding that the subject treated in the body of the proposed initiative be clearly expressed in its titles, and the other forbidding the union of separate and distinct subjects in the same proposed initiative. See In re Ballot Title 1999-2000 # 25, 974 P.2d 458, 460-61 (Colo.1999).
The single-subject requirement prevents the proponent of an initiated constitutional amendment or statute from joining two distinct and separate purposes that are not dependent upon or connected with each other. See In re Ballot Title 1999-2000 # 104, 987 P.2d 249, 253 (Colo.1999). Implementing provisions that are directly tied to the initiative's central focus are not separate subjects. See In re Ballot Title 1999-2000 # 200A, 992 P.2d 27, 30-31 (Colo.2000).
In conducting our single-subject review, we do not make policy  that role belongs to the initiative sponsors and, ultimately, to the voters who consider a proposed constitutional amendment or statute at the polls. Nor do we determine the initiative's efficacy, construction, or future application  *1098 that is for judicial decision in a proper case if the voters approve the proposal. See id. at 30. When necessary, however, we will characterize the proposal sufficiently to enable review of the Title Board's action. See In re Ballot Title 1997-98 # 62, 961 P.2d 1077, 1082 (Colo.1998); In re Ballot Title 1997-1998 # 30, 959 P.2d 822, 825 (Colo.1998).
The titles must be sufficiently clear and brief for the voters to understand the principal features of what is being proposed; a material omission can create misleading titles. See In re Ballot Title 1999-2000 # 29, 972 P.2d 257, 266 (Colo.1999). In setting the titles, the Board must "correctly and fairly express the true intent and meaning" of the proposed initiative and must "consider the public confusion that might be caused by misleading titles." § 1-40-106(3)(b), 1 C.R.S. (1999); In re Ballot Title 1999-2000 # # 245(f) & 245(g), 1 P.3d 739, 743 (Colo. 2000). Titles shall "unambiguously state the principle of the provision sought to be added, amended or repealed." In re Ballot Title 1999-2000 # 104, 987 P.2d at 254.
Titles may not contain a catch phrase that unfairly prejudices the proposal in its favor; this contravenes section 1-40-106(3)(a). See In re Ballot Title 1999-2000 # # 227 & 228, 3 P.3d 1, 6-7 (Colo.2000). A "catch phrase" consists of "words which could form the basis of a slogan for use by those who expect to carry out a campaign for or against an initiated constitutional amendment." In re Ballot Title 1997-1998 # 105, 961 P.2d 1092, 1100 (Colo.1998); see also In re Ballot Title 1997-1998 # 26, 954 P.2d 586, 593 (Colo.1998).

B. Single Subject
The central focus of Initiative # 258(A) is the instruction of all public school students using the English language. To this end, the initiative creates classrooms of non-English speaking students who are taught English and the other subjects of the school's curriculum in a "structured English immersion" program designed to bridge students into English language mainstream classrooms within one year.
Garcia claims that the principal purpose of the amendment, its directive to deliver all public school instruction in English, is joined with three other purposes in the amendment: (1) a fundamental reallocation of the power of school boards to control the instruction of students in their districts; (2) the abolition of bilingual education in the public schools; and (3) creation of a cause of action for enforcement of the initiative's provisions.
We agree that adoption of Initiative # 258(A) would impact the traditional powers of school boards. Those powers presently include the power to require bilingual education in public schools. Initiative # 258(A) provides that "[n]o school or school district shall be required to offer a bilingual education program." The initiative defines "bilingual education" as "any language acquisition program or other program of instruction in which some instruction, textbooks, and/or teaching materials are in the English-learner's native language."
This directive to teach all subjects in English, subject to the English immersion waiver exception and the exception for teaching foreign languages, would constrain schools, school districts, and school boards. But the mere fact that a constitutional amendment may affect the powers exercised by government under pre-existing constitutional provisions does not, taken alone, demonstrate that a proposal embraces more than one subject. All proposed constitutional amendments or laws would have the effect of changing the status quo in some respect if adopted by the voters.
Instead, in applying our standards for examining an alleged single-subject violation, we look to whether the purposes of the amendment are "distinct," "separate," or "unconnected." See In re "Public Rights In Waters II," 898 P.2d 1076, 1078-79 (Colo. 1995). The effect of altering the school districts' power to require bilingual education follows directly and logically from the central focus of Initiative # 258(A), which is to require instruction for all public school students (except the teaching of foreign languages) to be conducted in English. This effect is not a separate, distinct, or unconnected subject, but a logical incident of adopting structured English immersion as the chosen method of teaching non-English speaking students. Accordingly, we hold *1099 that the impact on school board powers does not constitute a separate subject.
Garcia's second single-subject argument is that, while Initiative # 258(A) holds out the ability for parents to transfer their children from the English immersion program into a bilingual education program, the initiative in fact contains the separate, distinct, and unconnected surreptitious purpose of abolishing bilingual education programs throughout Colorado's public school system.
We agree that the initiative does contain an apparent inconsistency between providing, on the one hand, for a waiver from the English immersion program in order to transfer into a bilingual program, and prohibiting school districts and schools from being required to provide bilingual programs, on the other. Placing limits on bilingual programs, however, is not a purpose separate, distinct, and unconnected from the initiative's central focus of providing for all public school instruction to be conducted in English. To the contrary, such limits appear to be connected to the initiative's central focus. Thus, we hold that the initiative's limits on bilingual education do not constitute a separate subject.
Garcia's final contention in regard to multiple subjects is that the initiative's creation of a cause of action for enforcement of its provisions constitutes a separate subject. As we have noted, however, implementation provisions tied to an initiative's central focus do not violate the single-subject requirement. See In re Ballot Title 1999-2000 # 200A, 992 P.2d at 30-31. This initiative presents an enforcement mechanism essentially identical to that considered and approved in In re Ballot Title 1999-2000 # 200A. Its inclusion here is not a separate subject.
Accordingly, we hold that Initiative # 258(A) does not violate the single-subject requirement.

C. Fair, Clear, Accurate Titles and Summary
Determining that the initiative does not contain multiple subjects does not end our inquiry. The Board's chosen language for the titles and summary must be fair, clear, and accurate, and must not mislead the voters. See In re Ballot Title 1999-2000 # 29, 972 P.2d at 259. The titles and summary are critical to the voters' accurate understanding of a proposal. Eliminating a key feature of the initiative from the titles is a fatal defect if that omission may cause confusion and mislead voters about what the initiative actually proposes. See In re Ballot Title 1997-98 # 62, 961 P.2d at 1082.
Garcia argues that the titles and summary for initiative # 258(A) do not accurately state the proposal and will mislead the voters. We agree. The titles and summary do not state, paraphrase, or summarize the initiative's provision that "no school or school district shall be required to offer a bilingual education program."
This omission of a key feature of Initiative # 258(A) is material, and renders the titles and summary misleading. The initiative and the titles recite that parents of non-English speaking children may opt out of the English immersion program into a bilingual program. But the initiative provides that no school district or school "shall be required to offer a bilingual education program." Thus, unless schools voluntarily offer a bilingual program  a decision which will, under the initiative, apparently have to occur school-by-school and which will thus depend on individual school resources and the predilections of individual school principals and faculty  parents of non-English speaking children may have no meaningful choice, despite the initiative's seeming provision of such a choice.
Due to the omission from the titles of the initiative's prohibition against bilingual programs being required, voters could reasonably conclude that Initiative # 258(A) does not alter the authority of school boards to implement the initiative's opt-out provision by requiring bilingual programs. Although the titles need not state every detail of an initiative or restate the obvious, they must not mislead the voters or promote voter confusion. See In re Ballot Title 1999-2000 # 29, 972 P.2d at 266. Titles that contain a "material and significant omission, misstatement, or misrepresentation" cannot stand. See In re Ballot Title 1997-98 # 62, 961 P.2d at 1082.
The Title Board's failure here to articulate in the titles that school districts and schools *1100 cannot be required to offer bilingual programs promotes confusion. Voters could assume that parents of non-English speaking students will have a meaningful choice between an English immersion program and a bilingual program, and, thus, favor the proposal as assuring both programs.
We hold that the titles are materially defective for failure to include a key feature of the initiative, which results in misleading and confusing the voters.

D. Catch Phrase
"It is well established that the use of catch phrases or slogans in the title, ballot title and submission clause, and summary should be carefully avoided by the Board." In re Amend Tabor No. 32, 908 P.2d 125, 130 (Colo.1995). This rule recognizes that the particular words chosen by the Title Board should not prejudice electors to vote for or against the proposed initiative merely by virtue of those words' appeal to emotion. See In re Ballot Title 1999-2000 # 215, 3 P.3d 11, 14 (Colo.2000). "Catch phrases" are words that work to a proposal's favor without contributing to voter understanding. By drawing attention to themselves and triggering a favorable response, catch phrases generate support for a proposal that hinges not on the content of the proposal itself, but merely on the wording of the catch phrase.
Catch phrases may also "form the basis of a slogan for use by those who expect to carry out a campaign for or against an initiated constitutional amendment," thus further prejudicing voter understanding of the issues actually presented. In re Ballot Title 1999-2000 # # 227 & 228, 3 P.3d at 6-7; In re Proposed Initiative on Casino Gaming, 649 P.2d 303, 308 (Colo.1982). Slogans are catch phrases tailored for political campaigns  brief striking phrases for use in advertising or promotion. They encourage prejudice in favor of the issue and, thereby, distract voters from consideration of the proposal's merits.
We determine the existence of a catch phrase or slogan in the context of contemporary political debate. See In re Ballot Title 1999-2000 # # 227 & 228, 3 P.3d at 7; In re Workers Comp Initiative, 850 P.2d 144, 147 (Colo.1993). We approach the potential existence of a catch phrase cautiously. See In re Ballot Title 1999-2000 # # 227 & 228, 3 P.3d at 7. Our task is to recognize terms that provoke political emotion and impede voter understanding, as opposed to those which are merely descriptive of the proposal. See id.
Here, the words "as rapidly and effectively as possible" are included in the first clause of the Board's titles. They appear in the title as follows:
An amendment to the Colorado Constitution concerning English language education, and in connection therewith, requiring all children in Colorado public schools to be taught English as rapidly and effectively as possible . . . .
(Emphasis added.) Counterpart language appears in the submission clause. These words operate as both a catch phrase and a slogan. They mask the policy question regarding whether the most rapid and effective way to teach English to non-English speaking children is through an English immersion program. This question is a subject of great public debate. By including the "as rapidly and effectively as possible" language in the titles for Initiative # 258(A), the Title Board tips the substantive debate surrounding the issue to be submitted to the electorate. While we agree that the initiative contains this language, the Title Board is not free to include this wording in the titles if, as here, it constitutes a catch phrase. See In re Proposed Initiative on "Obscenity," 877 P.2d 848, 850-51 (Colo.1994).

III.
Accordingly, we reverse the action of the Title Board.
Justice MARTINEZ concurs in the judgment and specially concurs, and Justice BENDER joins in the concurrence and special concurrence.

APPENDIX

Proposed Initiative "1999-2000  # 258(A)"[1]
The title as designated and fixed by the Board is as follows:
*1101 AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING ENGLISH LANGUAGE EDUCATION, AND IN CONNECTION THEREWITH, REQUIRING ALL CHILDREN IN COLORADO PUBLIC SCHOOLS TO BE TAUGHT ENGLISH AS RAPIDLY AND EFFECTIVELY AS POSSIBLE; REQUIRING EVERY CHILD TO BE TAUGHT IN ENGLISH, EXCEPT FOR CERTAIN CHILDREN WHO PRIMARILY SPEAK A LANGUAGE OTHER THAN ENGLISH; REQUIRING SUCH CHILDREN TO BE EDUCATED THROUGH A SPECIFICALLY DESIGNED ENGLISH IMMERSION PROGRAM DURING A TEMPORARY TRANSITION PERIOD NOT NORMALLY INTENDED TO EXCEED ONE YEAR AND TO THEREAFTER TRANSFER SUCH CHILDREN WHO HAVE ACQUIRED A GOOD WORKING KNOWLEDGE OF ENGLISH TO AN ENGLISH LANGUAGE MAINSTREAM CLASSROOM; EXCEPTING CERTAIN CHILDREN WHO PRIMARILY SPEAK A LANGUAGE OTHER THAN ENGLISH FROM SUCH ENGLISH IMMERSION PROGRAM WHEN THE PARENT OR LEGAL GUARDIAN PROVIDES A WRITTEN INFORMED CONSENT WAIVER; ESTABLISHING THE PARENT OR LEGAL GUARDIAN'S LEGAL STANDING TO SUE FOR ENFORCEMENT OF THE MEASURE AND, IF SUCCESSFUL, TO COLLECT ATTORNEY'S FEES AND ACTUAL DAMAGES; ESTABLISHING THAT THE AMENDMENT SHALL NOT AFFECT ANY CHARTER SCHOOL; SPECIFYING THAT THE AMENDMENT SHALL NOT AFFECT ANY FOREIGN LANGUAGE INSTRUCTION PROGRAM, EXCEPT FOR NATIVE SPEAKERS OF ANOTHER LANGUAGE, WHO ARE LIMITED TO ONE CLASS PERIOD PER DAY WITHOUT A PARENTAL WAIVER; SPECIFYING THAT THE AMENDMENT SHALL NOT PREVENT ANY TEACHER OR AIDE FROM PROVIDING SUPPLEMENTAL ASSISTANCE IN A NATIVE LANGUAGE TO A CHILD FOR TRANSLATION OR CLARIFICATION OR PREVENT ANY SCHOOL PERSONNEL FROM USING A LANGUAGE OTHER THAN ENGLISH FOR NON-INSTRUCTIONAL PURPOSES; AND CLARIFYING THAT THE AMENDMENT SHALL NOT BE CONSTRUED AS IMPOSING OR MANDATING ANY LIMITS ON THE AMOUNT OF TIME A CHILD MAY RECEIVE SPECIALIZED ASSISTANCE IN ORDER TO LEARN ENGLISH.
The ballot title and submission clause as designated and fixed by the Board is as follows:
SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING ENGLISH LANGUAGE EDUCATION, AND IN CONNECTION THEREWITH, REQUIRING ALL CHILDREN IN COLORADO PUBLIC SCHOOLS TO BE TAUGHT ENGLISH AS RAPIDLY AND EFFECTIVELY AS POSSIBLE; REQUIRING EVERY CHILD TO BE TAUGHT IN ENGLISH, EXCEPT FOR CERTAIN CHILDREN WHO PRIMARILY SPEAK A LANGUAGE OTHER THAN ENGLISH; REQUIRING SUCH CHILDREN TO BE EDUCATED THROUGH A SPECIFICALLY DESIGNED ENGLISH IMMERSION PROGRAM DURING A TEMPORARY TRANSITION PERIOD NOT NORMALLY INTENDED TO EXCEED ONE YEAR AND TO THEREAFTER TRANSFER SUCH CHILDREN WHO HAVE ACQUIRED A GOOD WORKING KNOWLEDGE OF ENGLISH TO AN ENGLISH LANGUAGE MAINSTREAM CLASSROOM; EXCEPTING CERTAIN CHILDREN WHO PRIMARILY SPEAK A LANGUAGE OTHER THAN ENGLISH FROM SUCH ENGLISH IMMERSION PROGRAM WHEN THE PARENT OR LEGAL GUARDIAN PROVIDES A WRITTEN INFORMED CONSENT WAIVER; ESTABLISHING THE PARENT OR LEGAL GUARDIAN'S LEGAL STANDING TO SUE FOR ENFORCEMENT OF THE MEASURE AND, IF SUCCESSFUL, TO COLLECT ATTORNEY'S FEES AND ACTUAL DAMAGES; ESTABLISHING THAT THE AMENDMENT SHALL NOT AFFECT ANY CHARTER SCHOOL; SPECIFYING THAT THE AMENDMENT SHALL NOT AFFECT ANY FOREIGN LANGUAGE INSTRUCTION PROGRAM, *1102 EXCEPT FOR NATIVE SPEAKERS OF ANOTHER LANGUAGE, WHO ARE LIMITED TO ONE CLASS PERIOD PER DAY WITHOUT A PARENTAL WAIVER; SPECIFYING THAT THE AMENDMENT SHALL NOT PREVENT ANY TEACHER OR AIDE FROM PROVIDING SUPPLEMENTAL ASSISTANCE IN A NATIVE LANGUAGE TO A CHILD FOR TRANSLATION OR CLARIFICATION OR PREVENT ANY SCHOOL PERSONNEL FROM USING A LANGUAGE OTHER THAN ENGLISH FOR NON-INSTRUCTIONAL PURPOSES; AND CLARIFYING THAT THE AMENDMENT SHALL NOT BE CONSTRUED AS IMPOSING OR MANDATING ANY LIMITS ON THE AMOUNT OF TIME A CHILD MAY RECEIVE SPECIALIZED ASSISTANCE IN ORDER TO LEARN ENGLISH?
The summary prepared by the Board is as follows:
The measure amends the Colorado constitution by declaring that the English language is the common language of the United States and of Colorado and that English proficiency is a prerequisite for economic opportunity. In addition, the measure declares that full proficiency in a new language is best developed through high levels of classroom exposure to the language at an early age.
The measure requires all children in Colorado public schools to be taught English as rapidly and effectively as possible.
The measure defines "English-learner" to mean a child who is not able to participate meaningfully in an English language mainstream classroom and primarily speaks a language other than English. The measure defines "structured English immersion" to mean a program of instruction specifically designed to teach English and academic subjects to English-learners, in which all instruction is in English at a level appropriate to the English proficiency of the class of English-learners. The measure specifies that English-learners shall be educated through a program of structured English immersion during a temporary transition period not normally to exceed one year. The measure specifies that all students, except students whose parents or legal guardians have given written informed consent and signed a written waiver, shall be taught in English. Upon acquiring a good working knowledge of English, the measure requires English-learners to be transferred to English language mainstream classes. The measure specifies that nothing shall be construed to impose or mandate any limit on the amount of time an English-learner may receive specialized assistance in order to learn English or academic subject matter.
The measure allows a student to be excepted from the structured English immersion education requirement upon the prior written informed consent of the student's parent or legal guardian. The measure identifies requirements of the written consent waiver, including a mandatory visit by the parent or legal guardian to the school to apply for the waiver and the provision to the parent or legal guardian, in a language they can understand, of a description of the educational materials and program of instruction offered at the school or at another school in the same school district. The measure specifies that if a parent has executed a waiver, the child may be transferred to classes where the child is taught English and other subjects through bilingual education or other generally recognized methodologies permitted by law. The measure requires schools that do not offer bilingual education to allow a parent to transfer his or her child to a school within the child's school district that does offer such a program, if one is available.
The measure specifies that nothing shall be construed to affect foreign language instruction programs designed to teach English-speakers another language and provides that native speakers of other languages who do not have a good working knowledge of English shall not be allowed to participate in any foreign language program for more than one class period per day without prior written informed consent of such child's parent or legal guardian.
The measure specifies that nothing shall be construed to prevent a teacher or instructional aide from providing supplemental assistance in the native language to English-learners for purposes of translation and clarification or to prevent school personnel from *1103 using languages other than English for non-instructional purposes.
The measure grants a child's parent or legal guardian the legal standing to sue for enforcement of the provisions of this measure. If successful, the measure authorizes the court to award the parent or legal guardian normal and customary attorneys' fees and actual damages.
The measure specifies that the constitutional amendment shall take effect upon proclamation of the vote by the governor and shall apply to public schools in school districts with school terms commencing on or after sixty calendar days of such proclamation.
The Department of Local Affairs has determined that there would be no fiscal impact on local governments other than school districts resulting from the enactment of this measure.
The Office of State Planning and Budgeting has determined that full compliance with the language of the measure would likely have a state fiscal impact. However, the Office of State Planning and Budgeting has determined that it is not possible to estimate the magnitude of the fiscal impact of the measure at this time because the specifics of the implementation and enforcement of this measure would be decided by school districts, the General Assembly, and the Governor at a future date.
Hearing April 19, 2000:
Single subject approved; staff draft amended; titles and summary set.
Hearing adjourned 9:55 p.m.
Hearing May 3, 2000:
Motion for Rehearing granted in part to the extent that titles and summary were amended in response to grounds stated in part IV of the Motion, and denied with respect to all other grounds.
Titles and summary amended.
Hearing adjourned 6:29 p.m.
The text of Initiative # 258(A) is as follows:
Be it Enacted by the People of the State of Colorado:
Section 1. Amendment of the Colorado Constitution for English Education.
Article IX of the Constitution of the state of Colorado is amended by the addition of a new section to read:
Section 17. English Language Education. (1) General Declarations. The English language is the common language of the United States and of Colorado, and proficiency in English is a prerequisite for economic opportunity. English proficiency is one of the most important skills that public schools provide students, regardless of their ethnicity or national origin. Full proficiency in a new language, such as English, is best developed through high levels of exposure to that language in the classroom at an early age. The current high dropout rates and low English proficiency levels of many immigrant children demonstrate that existing programs in many public schools do a poor job of educating immigrant children. Immigrant parents are eager to have their children acquire a good knowledge of English as quickly as possible, so their children may participate fully in the American Dream of economic and educational advancement.
(2) Definitions. For purposes of this section, the following terms have the following definitions:
(a) "Bilingual education" means any language acquisition program or other program of instruction in which some instruction, textbooks, and/or teaching materials are in the English-learner's native language.
(b) "English language mainstream classroom" means a standard classroom  that is, one in which the language of instruction is English and the students are native-English-speakers or have acquired enough fluency in English to be able to participate meaningfully in the program of instruction without additional accommodations.
(c) "English-learner" means a child who is not able to participate meaningfully in an English language mainstream classroom and primarily speaks a language other than English.
(d) "Structured English immersion" means a program of instruction specifically designed *1104 to teach English and academic subjects to English-learners, in which all instruction is in English at a level appropriate to the English proficiency of the class of English-learners.
(3) English language education. (a) All children in the state's public schools shall be taught English as rapidly and effectively as possible.
(b) Subject to the exceptions provided in subsection (4), all children in the state's public schools shall be taught in English.
(c) Children who are English-learners shall be educated through a program of structured English immersion during a temporary transition period not normally to exceed one year. Once English-learners have acquired a good working knowledge of English, they shall be transferred to English language mainstream classrooms.
(4) Exceptions. (a) The requirements of subsection (3) may be waived with the prior written informed consent, to be provided annually, of the child's parent or legal guardian.
(b) Such informed consent shall require that:
I. The parent or legal guardian must visit the school to apply for the waiver; and,
II. The parent or legal guardian shall be provided by the school with a full description, in a language they can understand, of the educational materials and program of instruction offered at the school or at other schools within the same school district.
(c) If after such a visit, the parent or legal guardian wishes the child to be in a program of instruction other than that required in subsection (3), the parent or legal guardian may waive the requirements of subsection (3) by executing a written waiver provided by the school district that indicates the parent's or legal guardian's choice. If a parent has executed a written waiver, the child may be transferred to classes where the child is taught English and other subjects through bilingual education or other generally recognized educational methodologies permitted by law. Schools that do not offer bilingual education must allow parents to transfer their children to a school within the district that offers this programs, if one is available. Parents shall be informed in a language they can understand of their right to refuse to agree to a waiver of the requirements of subsection (3). No school or school district shall be required to offer a bilingual education program.
(d) Nothing in this section shall be construed to affect any foreign language instruction program designed to teach English-speakers another language. Native speakers of other languages who do not already have a good working knowledge of English may not participate in any foreign language programs for more than one class period per day without a parental waiver as specified in this subsection.
(e) Nothing in this subsection (4) shall be construed to prevent any teacher or instructional aide from providing supplemental assistance in the native language to English-learners for the purposes of translation and clarification. Nor shall this subsection (4) be construed to prevent school personnel from using languages other than English for non-instructional purposes, including communicating with parents or legal guardians.
(f) Nothing in this subsection (4) shall be construed as imposing or mandating any limits on the amount of time English-learners may receive specialized assistance in order to learn English or academic subject matter. Students may continue to receive specialized language assistance after they exit the structured English immersion program.
(5) Legal standing and parental enforcement. If a child has been denied an English language education under subsection (3), the child's parent or legal guardian shall have legal standing to sue for enforcement of the provisions of this section. If successful, the parent or legal guardian shall be awarded normal and customary attorneys' fees and actual damages, but not punitive or consequential damages.
(6) Charter schools. Nothing in this section shall affect the creation, curriculum, or the operation of charter schools.
(7) Interpretation. Under circumstances in which portions of this section are subject to conflicting interpretations, subsection (3) *1105 shall be assumed to contain the governing intent of this section.
Section 2. Effective date  applicability. This act shall take effect upon proclamation by the Governor, and shall apply to public schools in school districts with school terms beginning more than sixty days after such date.
JUSTICE MARTINEZ, concurring and specially concurring:
I concur in the judgment of the court. I agree with the majority that the actions of the Title Board must be reversed because the titles and summary are unclear and misleading, in addition to employing a prohibited catch phrase. See maj. op. at 1097. However, I write separately to explain why, in my judgment, the Title Board also erred because the initiative contains multiple subjects, in violation of Colo. Const. art. V, section 1(5.5).[1]

I.
I begin with a brief review of the principles governing our inquiry into whether an initiative contains a single subject. An initiative does not contain a single subject if it has "at least two distinct and separate purposes that are not dependent upon or connected with each other." In re "Public Rights in Waters II", 898 P.2d 1076, 1078-79 (Colo. 1995). Despite the proponent's effort to unite distinct and unconnected purposes under the same general area of law, a measure has multiple subjects if it tends to carry out two or more general purposes. See In re Proposed Initiative for 1999-2000 # 200(A), 992 P.2d 27, 30 (Colo.2000); see also In re Proposed Initiative for 1999-2000 # 29, 972 P.2d 257, 262 (Colo.1999) ("Use of a generic title will not insulate a proposal from compliance with applicable constitutional and statutory requirements.").
This court may not consider the merits or application of a proposed initiative to determine if it contains a single subject. See In re Proposed Initiative # 29, 972 P.2d at 260. However, this court "must sufficiently examine" a proposal to determine if it complies with the single-subject requirement. See id. (internal quotation marks omitted).

II.
Applying these principles to the measure before us, I conclude that it contains at least three distinct and unrelated purposes: (1) instruction of Colorado public school students in the English language, with an option for parents to waive their children out of the "English immersion" program;[2] (2) reallocation of school districts' constitutional authority to control the instruction of their students; and (3) elimination of bilingual education programs. Therefore, I would reverse the actions of the Title Board on the additional ground that Initiative # 258(A) contains multiple subjects, in violation of Colo. Const. art. V, section 1(5.5).

A.
I begin by explaining why, in my judgment, Initiative # 258(A) has the distinct and unrelated subject of partially shifting school districts' constitutional authority to implement educational programs to local schools. The measure provides that "[n]o school or school district shall be required to offer a bilingual education program." Our prior decisions establish that such a reallocation of constitutional authority is a purpose distinct from and unrelated to the measure's central purpose of instructing students in English. Consequently, Initiative # 258(A) violates the single-subject requirement.

1.
On at least two occasions this court has rejected, under the single-subject requirement, *1106 initiatives that called for similar reallocations of constitutional authority. In In re Proposed Initiative for 1997-1998 # 64, 960 P.2d 1192 (Colo.1998), we considered an initiative with the central purpose of altering the qualifications of persons for judicial office. See id. at 1197. One provision of the initiative called for repeal of Colorado Constitution article VI, section 26, which grants the City and County of Denver control over county court judges of the City and County of Denver. See id. We held that this provision violated the single-subject requirement. See id. at 1198.
This court acknowledged that repeal of article VI, section 26 "indirectly affects the qualifications of Denver County court judges in the sense that it changes the governmental entity which controls those qualifications." Id. However, we recognized that the central objective of the repeal provision was to reallocate governmental authority and control over county judges for the City and County of Denver. See id. Such shifting of constitutional authority "does not share a unifying or common objective with those provisions changing the qualifications of judicial officers." Id. Therefore, we held that the repeal provision violated the single-subject requirement. See id. and cases cited therein.
Similarly, in In re Proposed Initiative # 29, 972 P.2d at 262, this court considered a measure purporting to address only the selection, retention, and removal of judicial personnel. We held that the proposal violated the single-subject requirement for several reasons. See id. Of particular relevance to this case is our analysis of the provision that curtailed the jurisdiction of Denver county courts. See id. at 264.
The initiative barred Denver county courts from exercising statewide jurisdiction, as provided for under section 13-6-103, 5 C.R.S. (1999), unless the City and County of Denver implemented the initiative's provisions in full. See id. Even though the provision did not directly call for a repeal of article VI, section 26, see id. & n.12, we held that it nonetheless violated the single-subject requirement on essentially the same grounds set forth in In re Proposed Initiative # 64, 960 P.2d at 1198. Compelling the City and County of Denver to implement the initiative's provisions regarding the qualification of judicial officers, at the risk of its county court judges losing statewide jurisdiction, "involves altering the constitutional power of the City and County of Denver over the county court." Id. We held that this purpose constitutes a separate subject and therefore invalidated the initiative. See id.

2.
In my judgment, the measure before us contains multiple subjects because it partially reallocates school districts' constitutional authority to control the instruction of students to schools within each district. This purpose is distinct and unrelated from the initiative's central purpose of securing public school students instruction in English.
Our state constitution expressly allows school districts to govern public school instruction. According to Colo. Const. art. IX, section 15:
The general assembly shall, by law, provide for organization of school districts of convenient size, in each of which shall be established a board of education, to consist of three or more directors to be elected by the qualified electors of the district. Said directors shall have control of instruction in the public schools of their districts.

(Emphasis added.) See also § 22-23-109(1)(t), 7 C.R.S. (1999) (stating that each board of education shall "determine the educational programs to be carried on in the schools of the district and to prescribe textbooks for any course of instruction or study in such programs").
This court has long recognized the clear meaning of article IX, section 15: "Here is a constitutional mandate that instruction in the public schools of every school district shall be under the control of the directors thereof." School Dist. No. 16 v. Union High Sch. No. 1, 60 Colo. 292, 293, 152 P. 1149, 1149 (1915); see also Board of Educ. v. Booth, 984 P.2d 639, 646 (Colo.1999) (stating that article IX, section 15 "makes Colorado one of only six states with an express constitutional provision for local governance [of public schools], underscoring the importance of the concept for our state"); Lujan v. Colorado State Bd. of Educ., 649 P.2d 1005, 1021 (Colo.1982) ("The historical development of public education *1107 in Colorado has been centered on the philosophy of local control.").
In Booth, 984 P.2d at 648-49, we reviewed our prior decisions concerning the scope of the authority granted local school districts under our constitution. Two of the "guiding principles," id. at 649, we identified are relevant to this case. First, a "generally applicable law triggers control of instruction concerns when applied to specific local school board decisions likely to implement important education policy." Id. Second, "general statutory or judicial constraints, if they exist, must not have the effect of usurping the local board's decision-making authority or its ability to implement, guide, or manage the educational programs for which it is ultimately responsible." Id.
Initiative # 258(A) states that "[n]o school or school district shall be required to offer a bilingual education program." This provision "triggers control of instruction concerns," Booth, 984 P.2d at 649, because it eliminates the capacity of a school district to require that a school within the district provide a bilingual education program. Instead, individual discrete schools would decide whether to provide a bilingual education program. Even if a school district establishes a policy of bilingual education, under the initiative a school within the district may refuse to implement the district's bilingual program. The result is a clear infringement of a school district's constitutional authority, because "control of instruction requires substantial discretion regarding the character of instruction that students will receive at the district's expense." Id. at 648.
A direct purpose of this provision is to partially shift the constitutional authority of school districts "to implement, guide, or manage the educational programs for which it is ultimately responsible" to local schools. Id. at 649. Because the purpose of reallocating the constitutional authority of school districts is distinct and unconnected from the purpose of fostering the instruction of public school students in English, the initiative violates the single-subject requirement. See In re Proposed Initiative # 64, 960 P.2d at 1198.
It does not save the initiative to note that it does not facially call for a reallocation of school districts' constitutional authority. We acknowledged in In re Proposed Initiative # 29, 972 P.2d at 265, that the provision at issue did not explicitly call for reallocation of the constitutional authority of the City and County of Denver over the county court judges. However, we recognized that the provision "involve[d] altering the constitutional power of the City and County of Denver," id., and, as such, constituted a separate subject in the initiative. See id. Similarly, even though the initiative before us does not explicitly require reallocation of school districts' constitutional authority, because it has that direct effect, the initiative violates the single-subject requirement.
Reallocation of school districts' constitutional authority cannot be legitimately interpreted as an implementing device, and thus part of the initiative's single subject of creating "English immersion" programs. We have upheld implementation provisions only when they are "directly tied" to the initiative's "central focus." In re Proposed Initiative # 200(A), 992 P.2d at 30. Dramatically curbing a local school district's constitutional authority, in my view, is not "directly tied" to the initiative's "central focus" of providing "English immersion" instruction because the former is not a "mechanism for carrying out the initiative's single subject." Id. at 31. Reallocation of constitutional authority is instead an independent purpose of the measure before us. Compare id. (upholding reporting provisions of initiative calling for "voluntary and informed consent" before an abortion procedure).
Moreover, the single-subject requirement is intended "to prevent surprise and fraud from being practiced upon voters" by not allowing disparate items to be concealed in a lengthy or complex proposal. In re Proposed Initiative # 64, 960 P.2d at 1196. I am confident that many voters would be surprised to find a far-reaching reallocation of their school district's constitutional power to control the instruction of students concealed in a single sentence in the middle of this initiative. See id.[3]
I conclude that Initiative # 258(A) violates the single-subject requirement because it *1108 shifts the constitutional authority of school districts to establish and implement bilingual educational programs to individual schools.

B.
I also believe that the initiative violates the single-subject requirement because it has the distinct and unrelated purpose of allowing for the elimination of bilingual education programs while granting parents an option of waiving their children out of the "English immersion" program into bilingual programs.
The central focus of the initiative is not to require "English immersion" as the sole method of instruction. Rather, subsection (4)(a)-(c) of the initiative provides a detailed procedure for parents to waive their children out of the "English immersion" program and into a bilingual or related educational program. These provisions are part of the measure's central focus of providing "English immersion" instruction as an alternative instruction program.
It follows that granting schools the authority not to provide bilingual education programs is a purpose not dependent upon or connected to the initiative's central focus of requiring "English immersion" instruction as an alternative method of instruction. A provision that is internally inconsistent with the core purpose of an initiative cannot be readily interpreted as "necessarily or properly connected" to the initiative's purpose. In re "Tabor 25", 900 P.2d 121, 125 (Colo.1995). I therefore cannot view the provision allowing for the elimination of bilingual education programs as part of the initiative's single subject.
Further, I believe that the measure before us is a prime example of the dangers the single-subject requirement is intended to prevent. The constitutional prohibition against an initiative containing more than a single subject "prevents the proponents of an initiative from joining multiple subjects into a single initiative in the hope of attracting enough support from various factions which may have different or conflicting interests." In re "Public Rights in Waters II", 898 P.2d at 1079. The single-subject requirement thereby prevents the passage of measures "that could not be carried upon their merits." In re Proposed Initiative # 64, 960 P.2d at 1196.
This initiative presents a dilemma to voters favoring the proposal's creation of a right to "English immersion" measures while believing that bilingual education is appropriate for some students and strongly objecting to curtailing a school district's ability to provide bilingual education programs. "A voter favoring one of the subjects but not the other is required to vote for both of them in an effort to secure approval of the subject he or she would like to have enacted. Article V, section 1(5.5) . . . prevent[s] such `log-rolling.'" In re Proposed Initiative # 29, 972 P.2d at 265.
I conclude that Initiative # 258(A) violates the single-subject requirement because it contemplates the elimination of bilingual education programs while also creating the right of parents to waive their children into such programs.

III.
I concur in the judgment of the court that the titles and summary of Initiative # 258(A) are unclear and misleading, and employ a prohibited catch phrase. I also specially concur because I believe that the initiative before us contains additional subjects that are unconnected with the purpose of providing "English immersion" instruction while also allowing parents to waive their children into bilingual education programs. Therefore, I would hold that the Title Board erred by setting a title for an initiative that contains more than one subject.
I am authorized to state that Justice BENDER joins in the concurrence and special concurrence.
NOTES
[1] The titles, summary, and Initiative # 258(A) are attached as Appendix A.
[2] Garcia lists the following issues for review:

1. Did the Ballot Title Setting Board (the "Board") incorrectly determine that Initiative 1999-2000 # 258(A) constitutes a single subject as required by Article V, section 1(5.5) of the Colorado Constitution and C.R.S. § 1-40-106.5? Particularly, does the initiative contain at least three distinct and separate subjects:
a. a mandate that "program[s] of structured English immersion" shall be developed and instituted in the state's public schools for children who primarily speak another language and who would not be able to participate meaningfully in an "English language mainstream classroom";
b. a particularized override of the fundamental constitutional structure and allocation of authority established by Article IX, section 15 of the Colorado Constitution  with no disclosure whatsoever in the title, ballot title and submission clause, or summary  to remove from local school boards their constitutionally vested power to require any of the schools in their districts to offer bilingual education programs (i.e., any classroom instruction in a child's native language if other than English); and
c. the establishment of a new constitutionally sanctioned civil cause of action against schools and school districts.
2. Did the Board incorrectly overrule Petitioners' objection that the title, ballot title and submission clause, and summary do not fairly express the true intent and meaning of Initiative 1999-2000 # 258(A) by failing to disclose the intent and effect of the initiative to fundamentally alter the constitutional structure and allocation of power to local school boards over "control of instruction in the public schools of their respective districts"  and thus to override Article IX, section 15 of the Colorado Constitution  with regard to the provision of bilingual education programs?
3. Did the Board incorrectly overrule Petitioners' objection that the title, ballot title and submission clause, and summary are unfair and prejudicial in that they explicitly and officially characterize the programs of "structured English immersion" mandated by Initiative 1999-2000 # 258(A) as programs under which children will be taught English "as rapidly and effectively as possible"?
4. Did the Board incorrectly overrule Petitioners' objection that the title and the ballot title and submission clause do not fairly express the true intent and meaning of Initiative 1999-2000 # 258(A), to require the design and full implementation of the mandated "structured English immersion" programs within extreme time constraints?
[1] English Language Education in Public Schools
[1] "No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls." Colo. Const. art. V, § 1(5.5). See also § 1-40-106.5(3), 1 C.R.S. (1999).
[2] This is the purpose of the initiative articulated by its proponents and the Title Board in their briefs, although each expresses the purpose in slightly different terms than does the other.
[3] This argument reiterates the majority's holding that the title and summary are unclear and misleading. However, provisions causing voter surprise or uninformed voting also may constitute a single-subject violation.