234 P.3d 642 (2010)
In the Matter of the TITLE, BALLOT TITLE and SUBMISSION CLAUSE FOR 2009-2010 # 45.
Dr. Mark Earnest; Peter Leibig; Albert Schnellbacher, Jr.; AARP Colorado; Colorado Community Health Network; Colorado Coalition for the Medically Underserved; and Colorado Consumer Health Initiative; Petitioners
v.
Linda Gorman and Jon Caldara, Proponents, Respondents and
William A. Hobbs, Dan Domenico, and Dan Cartin, Title Board.
No. 10SA100.
Supreme Court of Colorado, En Banc.
June 21, 2010.
*644 Isaacson Rosenbaum P.C., Mark G. Grueskin, Denver, Colorado, Attorneys for Petitioners.
John W. Suthers, Attorney General, Maurice G. Knaizer, Deputy Attorney General, Denver, Colorado, Attorneys for Title Board.
No appearance by or on behalf of Linda Gorman and Jon Caldara.
Justice HOBBS delivered the Opinion of the Court.
The petitioners, registered electors of the State of Colorado and organizations whose members include registered electors of the State of Colorado,[1] brought this original proceeding pursuant to section 1-40-107(2), C.R.S. (2009), challenging the action of the Title Board in setting the title and ballot title and submission clause for Proposed Initiative 2009-2010 # 45 ("Initiative # 45"). Initiative # 45 proposes an amendment to the Colorado Constitution establishing a right to health care choice, implemented by prohibiting state law from requiring individuals to participate in any health insurance plan.[2] The petitioners argue that Initiative # 45 contains more than one subject, that the title is inaccurate and misleading, and that the title contains an impermissible "catch phrase." We agree with the Title Board that Initiative # 45 contains only one subject: preserving individuals' rights to choose their own health care arrangements. We also determine that the title and ballot title and submission clause are fair and accurate, and that the title does not contain an impermissible catch phrase.

I.
The Title Board set the title, ballot title and submission clause, and summary for Initiative # 45 at its hearing on March 17, 2010. The petitioners filed a motion for rehearing, and the Title Board denied their motion at its hearing on April 7. The petitioners filed this original proceeding with us on April 14, pursuant to section 1-40-107(2).
Initiative # 45 proposes to amend the Colorado Constitution by adding article II, section 32, entitled "Right to health care choice." Following a general statement that "[a]ll persons shall have the right to health care choice," the amendment states,

*645 No statute, regulation, resolution or policy adopted or enforced by the State of Colorado, its departments and agencies, independently or at the instance of the United States shall:
(a) Require any person directly or indirectly to participate in any public or private health insurance plan, health coverage plan, health benefit plan, or similar plan; or
(b) Deny, restrict, or penalize the right or ability of any person to make or receive direct payments for lawful health care services.
Initiative # 45 defines "lawful health care services" as "any service or treatment permitted or not prohibited by any provision of Colorado law." Initiative #45 exempts emergency medical treatment required to be provided by hospitals, health facilities, or other health care providers, and it exempts health benefits provided in connection with workers' compensation or similar insurance.
Initiative #45 also clarifies that the proposed constitutional amendment is intended to "reflect and affirm" the powers reserved to the state by the Tenth Amendment of the U.S. Constitution and to implement the powers reserved to the people by article V, section 1 of the Colorado Constitution. Finally, Initiative #45 contains standard procedural clauses, including a severability clause and a clause stating that the amendment takes effect upon proclamation by the governor, is self implementing, and supersedes any other provision of law.
After a hearing, the Title Board set the title to read:
An amendment to the Colorado constitution concerning the right of all persons to health care choice, and, in connection therewith, prohibiting the state independently or at the instance of the United States from adopting or enforcing any statute, regulation, resolution, or policy that requires a person to participate in a public or private health insurance or coverage plan or that denies, restricts or penalizes the right or ability of a person to make or receive direct payments for lawful health care services; and exempting from the effects of the amendment emergency medical treatment required to be provided by hospitals, health facilities, and health care providers or health benefits provided under workers' compensation or similar insurance.
The petitioners timely filed this original proceeding challenging the Title Board's action.

II.
We hold that Initiative # 45 contains only one subject: preserving individuals' rights to choose their own health care arrangements. We also determine that the title and ballot title and submission clause are fair and accurate, and that the title does not contain an impermissible catch phrase.

A. Standard of Review
When reviewing a challenge to the Title Board's setting of a title and ballot title and submission clause of an initiative, we employ all legitimate presumptions in favor of the propriety of the Board's actions. In re Title, Ballot Title, & Submission Clause for 2009-2010, #24, 218 P.3d 350, 353 (Colo. 2009). We do not determine the initiative's efficacy, construction, or future application, which is properly determined if and after the voters approve the proposal. In re Title, Ballot Title & Submission Clause, & Summary for 1999-2000 # 258(A) (English Language Educ. in Pub. Schs.), 4 P.3d 1094, 1097-98 (Colo.2000). However, some examination of the initiative's text is necessary in order to review the Title Board's action. In re Title & Ballot Title & Submission Clause for 2005-2006 # 55, 138 P.3d 273, 275, 278 (Colo.2006).

B. Single-Subject Requirement

1. Law
Article V, section 1(5.5) of the Colorado Constitution requires that "[n]o measure shall be proposed by petition containing more than one subject." To run afoul of the single-subject requirement, the proposed initiative must have at least two distinct and separate purposes that are not dependent upon or connected with each other. In re # 24, 218 P.3d at 352.
*646 An initiative that tends to carry out one general, broad objective or purpose does not violate this constitutional rule. In re Title, Ballot Title & Submission Clause, & Summary for Proposed Initiative Petitions, 907 P.2d 586, 590 (Colo.1995) (upholding an initiative that constituted "a single, if quite general, subject"). However, a proponent's attempt to characterize an initiative under some overarching theme will not save an initiative that contains separate and unconnected purposes from violating the single-subject rule. In re Title, Ballot Title & Submission Clause for Proposed Initiative 2001-02 #43, 46 P.3d 438, 442 (Colo.2002) (citing In re Proposed Initiative on "Pub. Rights in Water II", 898 P.2d 1076, 1080 (Colo.1995)). An initiative may contain several purposes, but they must be interrelated to avoid violating the single-subject requirement. In re # 55, 138 P.3d at 278. Implementing provisions that are directly tied to the initiative's central focus are not separate subjects. In re # 258(A), 4 P.3d at 1097.
The well-established purpose of the single-subject requirement is to prevent proponents from joining "incongruous subjects in the same measure," thereby ensuring that "each proposal depends on its own merits for passage." In re # 43, 46 P.3d at 441 (quoting In re Pub. Rights in Waters II, 898 P.2d at 1078). By prohibiting multiple subjects in one proposed initiative, the constitutional rule protects against "fraud and surprise occasioned by the inadvertent passage of a surreptitious provision coiled up in the folds of a complex [initiative]." In re # 55, 138 P.3d at 277 (quoting In re # 43, 46 P.3d at 439) (internal quotations and emphasis omitted).
In order to determine whether an initiative carries out a single purpose, we must review the initiative as a whole rather than piecemeal and examine individual statements in light of their context. In re # 24, 218 P.3d at 353. We construe the single-subject requirement liberally to avoid unduly restricting the initiative process. Id.

2. Application
Here, petitioners argue that Initiative # 45 deals with three subjects: (1) the creation of a new, undefined constitutional "right" to "health care choice"; (2) the applicability of state or federal mandates to participate in any public or private health care plan or benefit; and (3) the preservation of an individual's ability to personally pay health care providers. In addition, petitioners contend that the first subject, the creation of a "right to health care choice," is so overly-broad as to violate the single-subject requirement. The Title Board responds that this initiative has only one subjectpreserving individuals' rights to choose their own health care arrangementsand that all the initiative's provisions relate to this subject.
We agree with the Title Board and refuse to read Initiative # 45's initial statement separate from its context. See In re # 24, 218 P.3d at 353. We disagree with petitioners' argument that Initiative # 45's broad initial statement creates an undefined, overly-broad "right to health care choice." Initiative # 45 is similar to the initiatives we reviewed in In re # 24. In that case, we reviewed proposed initiatives regarding elections for employee representation. Id. The petitioners argued that the first sentence of those initiatives, each stating that "[t]he right of individuals to vote by secret ballot is fundamental," was overly broad in scope, in violation of the single-subject requirement. Id. But, we refused to sever this statement from its surrounding text. Id. at 353-54. We held that the following sentence of the initiative confined the purportedly broad reach of the initial sentence to situations involving employee elections. Id. We reasoned, "[w]here the first sentence is a statement of principle..., the second is a discussion of application, outlining when and to what extent the right to secret ballot will be protected" and "illustrating how the right to secret ballot voting proposed by the [i]nitiatives would work in practice." Id. at 354.
As in In re # 24, we must read Initiative #45's initial broad statement of principle regarding the "right to health care choice" in connection with the following implementing provisions. Here, the very next sentence states that no law adopted or enforced by the State of Colorado can require a person to participate in a health insurance plan or deny *647 a person the right to make or receive direct payment for health care services. This second sentence confines the reach of the first sentence and outlines when and to what extent the right to health care choice would be protected and how that right would work in practice. Thus, reading the initiative as a whole, Initiative # 45's opening statement does not create an overarching right to health care choice disconnected from health care payment systems outlined in the following sentence of the initiative. See id. at 354.
We also disagree with the petitioners that the remaining two provisions are separate and distinct subjects; instead, they are "directly tied to the initiative's central focus," In re # 258(A), 4 P.3d at 1097. Petitioners argue that the first provisionconfining the applicability of federal or state mandates to participate in health care plansis separate and distinct from the second provisionpreserving the individual's ability to pay or receive payment for health care services.
To the contrary, both provisions are directly connected and related to the initiative's purpose of protecting individuals' rights to choose their own health care arrangements. Without the first provision, the General Assembly or state administrative agencies could mandate that individuals participate in health care plans. Without the second provision, the state could attempt to circumvent the first provision by requiring individuals to indirectly pay for health care services, thereby limiting individuals' ability to manage their own health care arrangements. Therefore, both provisions seek to achieve the central purpose of the initiative.
Contrary to the petitioners' argument, our holding is consistent with In re # 55. In that case, we reviewed the Title Board's actions regarding an initiative attempting to restrict access of persons not lawfully present in the United States to non-emergency governmental services. In re # 55, 138 P.3d at 275-76. By a plain reading of Initiative #55, we found two subjects: terminating services for persons not lawfully present in Colorado and restricting unrelated administrative services. Id. at 275. We held that the initiative violated the single-subject rule because, by failing to define the critical term "non-emergency services," the "[i]nitiative's complexity and omnibus proportions [were] hidden from the voter," and it "fail[ed] to inform voters of the services its passage would affect." Id. at 282. We reasoned that voters might find that they unwittingly voted to restrict all services, despite only wishing to reduce taxpayer expenditures for medical and social services. Id. Additionally, we held that the various purposes of the initiative in that caserestricting non-emergency services, reducing taxpayer expenditures, and prohibiting the targeted group from participating in administrative serviceswere insufficiently connected to be considered a single subject. Id.
Unlike Initiative # 55, Initiative # 45 cannot be characterized as either "omnibus" or "complex." No provision is hidden or concealed from the voters in the title or ballot title and submission clause that would cause voter surprise. Likewise, no complicated term is left undefined such that voters would be uninformed of the possible reach of the proposed initiative. Unlike the multiple purposes of Initiative # 55, Initiative # 45 is unitary in its intent to leave to individuals the ability to manage their own health care arrangements. In this initiative, there is no grouping of distinct, unconnected, or incongruous purposes under a broad theme.
Thus, we hold that Initiative # 45's provisions do not constitute separate subjects in violation of the Colorado Constitution.

C. Clear Title Requirement

1. Law
Article V, section 1(5.5) of the Colorado Constitution also requires that the initiative's single subject be clearly expressed in its title.
The matter covered by [the initiative] is to be clearly, not dubiously or obscurely, indicated by the title. Its relation to the subject must not rest upon a merely possible or doubtful inference. The connection must be so obvious as that ingenious reasoning, aided by superior rhetoric, will not be necessary to reveal it. Such connection should be within the comprehension of the *648 ordinary intellect, as well as the trained legal mind.
In re Title, Ballot Title & Submission Clause, & Summary for 1999-2000 # 25, 974 P.2d 458, 462 (Colo.1999) (quoting In re Breene, 14 Colo. 401, 406, 24 P. 3, 4 (1890)) (internal quotation marks omitted).
Titles and submission clauses should "enable the electorate, whether familiar or unfamiliar with the subject matter of a particular proposal, to determine intelligently whether to support or oppose such a proposal." In re # 24, 218 P.3d at 356 (quoting In re Title, Ballot Title & Submission Clause for Proposed Initiative on Parental Notification of Abortions for Minors, 794 P.2d 238, 242 (Colo.1990)). The purpose of reviewing an initiative title for clarity parallels that of the single-subject requirement: voter protection through reasonably ascertainable expression of the initiative's purpose. See id.
The General Assembly has set forth a clear-title standard in section 1-40-106(3)(b), C.R.S. (2009), requiring the Title Board to "consider the public confusion that might be caused by misleading titles" and to "avoid titles for which the general understanding of the effect of a `yes' or `no' vote will be unclear." The title must "correctly and fairly express the true intent and meaning" of the initiative. § 1-40-106(3)(b).
We do not consider whether the Title Board set the best possible title; rather, our duty is to ensure that the title "fairly reflect[s] the proposed initiative so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the Board." In re Title, Ballot Title, & Submission Clause for 2007-2008 # 62, 184 P.3d 52, 58 (Colo.2008) (quoting In re Proposed Initiative Concerning the Fair Treatment of Injured Workers Amendment, 873 P.2d 718, 719 (Colo.1994)) (emphasis omitted). We give great deference to the Title Board in the exercise of its drafting authority and will reverse its decision only if the titles are insufficient, unfair, or misleading. Id. at 60.

2. Application
The text of Initiative # 45 states that "[n]o statute, regulation, resolution, or policy adopted or enforced by the State of Colorado, its departments and agencies, independently or at the instance of the United States shall" require an individual to participate in a health care plan or prevent an individual from making or receiving direct payment for health care services.
The petitioners argue that the title set by the Title Board for Initiative # 45 is inaccurate and mischaracterizes the text of the initiative. Specifically, they argue that the Title Board's statement in the title that Initiative # 45 "prohibit[s] the state independently or at the instance of the United States from adopting or enforcing any statute, regulation, resolution, or policy" is inaccurate because the initiative prohibits only the enforcement of such laws, and not their adoption. In other words, the petitioners argue that, under Initiative # 45, the General Assembly may pass laws that regulate health care payment and insurance, but those measures could not be given legal effect to the extent they violate Initiative # 45. As such, the petitioners claim that the title improperly indicates that the initiative affects the law-making powers of the legislature and the state's administrative agencies, when it only affects the executive branch's administration and the judicial branch's construction of laws adopted by the legislative branch.
In making their argument, the petitioners perceive a distinction without a difference. We are not permitted in our review to determine the legal meaning or application of the initiative when reviewing its title for defects. See In re # 24, 218 P.3d at 355. Even so, whether the initiative prevents the legislature from enacting such laws or prohibits their enforcement is immaterial.
For purposes of a voter determining whether to vote "yes" or "no," the effect of the initiative is the same and is clear in the title set by the Title Board: no Colorado law will be permissible under the state's constitution that requires an individual to participate in a health care plan or prevents an individual from paying directly for health care services. *649 The title of Initiative # 45 is not likely to mislead voters as to the initiative's purpose or effect, nor does the title conceal some hidden intent.[3]See In re # 24, 218 P.3d at 356. Because the title is not insufficient, unfair, or misleading, we defer to the Title Board's drafting authority. See In re # 62, 184 P.3d at 60.

D. Catch Phrase Prohibition

1. Law
The Title Board must avoid using catch phrases or slogans when formulating a title and ballot title and submission clause. In re # 258(A), 4 P.3d at 1100. Catch phrases are words that work in favor of a proposal without contributing to voter understanding. In re # 62, 184 P.3d at 60; In re # 258(A), 4 P.3d at 1100. "By drawing attention to themselves and triggering a favorable response, catch phrases generate support for a proposal that hinges not on the content itself, but merely on the wording of the catch phrase." In re # 62, 184 P.3d at 60; In re # 258(A), 4 P.3d at 1100. Slogans are brief, striking phrases designed for use in advertising or promotion that encourage prejudice in favor of the proposal, impermissibly distracting voters from the merits of the proposal. In re # 258(A), 4 P.3d at 1100. The purpose of the rule prohibiting catch phrases is to prevent prejudicing voters in favor of the proposed initiative merely by virtue of those words' appeal to emotion and to avoid distracting voters from consideration of the proposed initiative's merits. Id.
Our task is not to prevent voters from making a choice, but rather to guard against inflammatory catch words or phrases that promote prejudice in place of understanding what is really being proposed. Accordingly, phrases that merely describe the proposal are not impermissible catch phrases, while phrases that provoke emotion such that they distract from the merits of the proposal are catch phrases. See id. Petitioners must offer evidence beyond the "bare assertion that political disagreement currently exists" regarding the challenged phrase. In re Title, Ballot Title & Submission Clause, & Summary for 1999-2000 # 227 & # 228, 3 P.3d 1, 7 (Colo.2000) (quoting In re Title, Ballot Title & Submission Clause, & Summary for Proposed Petition (Amend Tabor No. 32), 908 P.2d 125, 130 (Colo.1995)).
Accordingly, despite arguments to the contrary, we have approved the use of the phrases "just cause" and "mediation," In re # 62, 184 P.3d at 61; "criminal conduct," Blake v. King, 185 P.3d 142, 147 (Colo.2008); "term limits," In re Title, Ballot Title & Submission Clause, & Summary for 2005-2006 # 75, 138 P.3d 267, 269-70 (Colo.2006); "preserve ... the social institution of marriage," In re #227 & #228, 3 P.3d at 7; "management of growth," In re Title, Ballot Title & Submission Clause, & Summary for 1999-00 # 256, 12 P.3d 246, 257 (Colo.2000); "refund to taxpayers," In re Title, Ballot Title & Submission Clause, & Summary for 1997-1998 # 105 (Payments by Conservation Dist. to Pub. Sch. Fund & Sch. Dists.), 961 P.2d 1092, 1100 (Colo.1998); "protect the environment and human health," In re Title, Ballot Title & Submission Clause, & Summary for 1997-98 # 112 (Livestock Operations), 962 P.2d 255, 256 (Colo.1998); and "public's interests in state waters," In re Title, Ballot Title, Submission Clause, & *650 Summary for Proposed Initiative "1996-6", 917 P.2d 1277, 1281 (Colo.1996).
On the other hand, we have held improper the phrase "as rapidly and effectively as possible" in the context of an English-immersion education initiative because the phrase masked the basic policy question underlying the initiative, that is, whether English-immersion programs are the best way to teach English to non-English speakers. In re # 258(A), 4 P.3d at 1100. In that context, the phrase unfairly "tip[ped] the substantive debate surrounding the issue to be submitted to the electorate." Id.

2. Application
The petitioners argue that the title's phrase "right of health care choice"[4] is a politically-charged catch phrase. To support this argument, the petitioners presented to the Title Board evidence that advocacy groups opposing national health care reform legislation recommend emphasizing "choice" when discussing health care to garner public support.
We disagree with the petitioners. The standard cannot be that a phrase becomes a catch phrase if the petitioner proves that it polls with the public better than other phrases. Surely the same could be said about the phrases "management of growth," "preserve the social institution of marriage," and "protect the environment and human health"phrases we have held are not improper catch phrases. The purpose of the catch-phrase prohibition is to prevent prejudice and voter confusion, see id., not to forbid the use of language that proponents of the initiative might also use in their campaigns.[5]
Instead, the petitioners must prove that, rather than describing the initiative, the phrase provokes emotion such that it impermissibly distracts voters from consideration of the initiative's merits. Id. Here, the phrase "right of health care choice" is a descriptive term that straight-forwardly presents the issue to voters: shall the Colorado Constitution contain a provision protecting the rights of individuals to choose their own health care arrangements? Though the phrase "right of health care choice" is somewhat generic, it is followed directly by language in the title that clarifies and narrows its meaning. The risk of the phrase distracting from the proposal's merits or confusing voters is low, and what the initiative proposes is clear.[6] Accordingly, we hold that the phrase "right of health care choice" is not an impermissible catch phrase.

III.
Accordingly, we affirm the Title Board's action in setting the title and ballot title and submission clause for Initiative # 45.

APPENDIXProposed Initiative # 45
Be it Enacted by the People of the State of Colorado:
Article II of the Constitution of the State of Colorado is amended BY THE ADDITION OF A NEW SECTION to read:

*651 Section 32. Right to health care choice.
(1) ALL PERSONS SHALL HAVE THE RIGHT TO HEALTH CARE CHOICE. NO STATUTE, REGULATION, RESOLUTION, OR POLICY ADOPTED OR ENFORCED BY THE STATE OF COLORADO, ITS DEPARTMENTS AND AGENCIES, INDEPENDENTLY OR AT THE INSTANCE OF THE UNITED STATES SHALL:
(a) REQUIRE ANY PERSON DIRECTLY OR INDIRECTLY TO PARTICIPATE IN ANY PUBLIC OR PRIVATE HEALTH INSURANCE PLAN, HEALTH COVERAGE PLAN, HEALTH BENEFIT PLAN, OR SIMILAR PLAN; OR
(b) DENY, RESTRICT, OR PENALIZE THE RIGHT OR ABILITY OF ANY PERSON TO MAKE OR RECEIVE DIRECT PAYMENTS FOR LAWFUL HEALTH CARE SERVICES.
(2) THIS SECTION SHALL NOT APPLY TO, AFFECT, OR PROHIBIT: (A) EMERGENCY MEDICAL TREATMENT REQUIRED BY LAW TO BE PROVIDED OR PERFORMED BY HOSPITALS, HEALTH FACILITIES, OR OTHER HEALTH CARE PROVIDERS; OR (B) HEALTH BENEFITS PROVIDED IN CONNECTION WITH WORKERS' COMPENSATION OR SIMILAR INSURANCE.
(3) "LAWFUL HEALTH CARE SERVICES" MEANS ANY SERVICE OR TREATMENT PERMITTED OR NOT PROHIBITED BY ANY PROVISION OF COLORADO LAW.
(4) THIS SECTION IS INTENDED TO REFLECT AND AFFIRM THE POWERS RESERVED TO THE STATE BY U.S. CONST., amend. X, AND TO IMPLEMENT THE POWERS RESERVED TO THE PEOPLE BY SECTION 1 OF ARTICLE V OF THIS CONSTITUTION.
(5) THIS SECTION SHALL BECOME EFFECTIVE UPON PROCLAMATION BY THE GOVERNOR, SHALL BE SELF IMPLEMENTING IN ALL RESPECTS, AND SHALL SUPERSEDE ANY PROVISION TO THE CONTRARY IN THE CONSTITUTION OF THE STATE OF COLORADO OR ANY OTHER PROVISION OF LAW.
(6) IF ANY PROVISION OF THIS SECTION OR THE APPLICATION THEREOF TO ANY PERSON, ENTITY, OR CIRCUMSTANCES IS HELD INVALID, SUCH INVALIDITY SHALL NOT AFFECT OTHER PROVISIONS OR APPLICATIONS OF THIS SECTION THAT CAN BE GIVEN EFFECT WITHOUT THE INVALID PROVISION OR APPLICATION, AND TO THIS END THE PROVISIONS OF THIS SECTION ARE DECLARED SEVERABLE.

Ballot Title Setting Board
Proposed Initiative 2009-2010 # 45[*]
The title as designated and fixed by the Board is as follows:
An amendment to the Colorado constitution concerning the right of all persons to health care choice, and, in connection therewith, prohibiting the state independently or at the instance of the United States from adopting or enforcing any statute, regulation, resolution, or policy that requires a person to participate in a public or private health insurance coverage plan or that denies, restricts, or penalizes the right or ability of a person to make or receive direct payments for lawful health care services; and exempting from the effects of the amendment emergency medical treatment required to be provided by hospitals, health facilities, and health care providers or health benefits provided under workers' compensation or similar insurance.
The ballot title and submission clause as designated and fixed by the Board is as follows:
Shall there be an amendment to the Colorado constitution concerning the right of all persons to health care choice, and, in connection *652 therewith, prohibiting the state independently or at the instance of the United States from adopting or enforcing any statute, regulation, resolution, or policy that requires a person to participate in a public or private health insurance or coverage plan or that denies, restricts, or penalizes the right or ability of a person to make or receive direct payments for lawful health care services; and exempting from the effects of the amendment emergency medical treatment required to be provided by hospitals, health facilities, and health care providers or health benefits provided under workers' compensation or similar insurance?
Hearing March 17, 2010:
Single subject approved; staff draft amended; titles set.
Hearing adjourned 9:48 a.m.
Hearing April 7, 2010:
Motion for Rehearing denied.
Hearing adjourned 12:31 p.m.
Chief Justice MULLARKEY concurs in part and dissents in part, and Justice MARTINEZ joins in the concurrence and the dissent.
Justice MARTINEZ concurs in part and dissents in part, and Chief Justice MULLARKEY joins in the concurrence and the dissent.
Chief Justice MULLARKEY, concurring in part and dissenting in part.
I concur in the majority's opinion that the initiative embraces a single subject. Because the words "right of health care choice" in the proposed title are a catch phrase or slogan I respectfully dissent from the majority's acceptance of the title filed by the title board.
"It is well established that the use of catch phrases or slogans in the title, ballot title and submission clause, and summary should be carefully avoided by the Board." In re Title, Ballot Title & Submission Clause, & Summary for Proposed Petition (Amend Tabor No. 32), 908 P.2d 125, 130 (Colo.1995) (citations omitted). "This rule recognizes that the particular words chosen by the Title Board should not prejudice electors to vote for or against the proposed initiative merely by virtue of those words' appeal to emotion." In re Title, Ballot Title & Submission Clause, & Summary for 1999-2000 # 258(A), 4 P.3d 1094, 1100 (Colo.2000) (citation omitted). "The Title Board's inclusion of a catch phrase in a title and summary may create prejudice for the proposal in violation of section 1-40-106(3)(a) [C.R.S. (2009)] and is therefore prohibited." In re Title, Ballot Title & Submission Clause, & Summary for 1999-2000 # 227 and # 228, 3 P.3d 1, 7 (Colo. 2000). "Catch phrases may also form the basis of a slogan for use by those who expect to carry out a campaign for or against an initiated constitutional amendment, thus further prejudicing voter understanding of the issues actually presented." In re 258(A), 4 P.3d at 1100 (citations and quotations omitted). "We determine the existence of a catch phrase in the context of contemporary political debate." Id. at 1100.
Two of our cases have rejected a proposed title for having a catch phrase or slogan, and a third upheld the title board's rejection of a title for that reason. In 2000, a proposed ballot initiative required that all public school students in Colorado be taught in English. Id. If English were a student's second language, the student would enter an English immersion program. The title included the phrase "as rapidly and effectively as possible" when describing how the proposed immersion program would teach English. Because this was a value judgment about the program, not a description of what the program was, this court rejected it as a catch phrase and a slogan. In 1994, a ballot initiative concerning government transparency and lobbying rules contained the phrases "consumer protection" and "open government" in its title. In re Title, Ballot Title & Submission Clause, & Summary for Proposed Initiative Designated "Governmental Business", 875 P.2d 871 (Colo.1994). The court rejected these phrases because they were potential catch phrases or slogans.
In 1958, this court upheld a title board ruling that the phrase "freedom to work" could not be included in the ballot title of an initiative prohibiting union membership as a *653 condition of employment. Say v. Baker, 137 Colo. 155, 322 P.2d 317 (Colo.1958). The title selected by the title board read:
An Act to Amend Article 2 of the State Constitution, by Adding a New Section Thereto Providing That Membership or Non-Membership in Any Labor Union or Labor Organization Shall Not Be Cause for Denying Employment to Any Person; and Providing That No Agreement Shall Be Entered Into Requiring Such Membership or Non-Membership as a Condition of Employment.
Id. at 157, 318. The proponents appealed, contending that the title should read: "An Act to Amend Article II of the State Constitution to Guarantee Freedom to Work Regardless of Membership or Non-Membership in Any Labor Organization, and to Prohibit Contracts Denying Such Freedom." Id. The proponents argued that the title given to the initiative by the title board was unfair, and that it should "contain the words `Freedom to Work' consistent with similar expressions of protection of liberty and individual dignity found in the Bill of Rights." Id.
At the time, political battles over unionized labor were a topic of national debate. This court rejected the proponents' argument, saying that "the board acted wisely in refusing to use words in the title which would tend to color the merit of the proposal on one side or the other." Id. at 160, 322 P.2d at 320. The court emphasized that "[c]atch phrases or words which could form the basis of a slogan for use by those who expect to carry on a campaign for or against an initiated constitutional amendment should be carefully avoided." Id.
The phrase in question here, "right of health care choice," is similar to the "freedom to work" phrase that was ruled a catch phrase in Say v. Baker. Both phrases attempt to add luster to the proposed initiatives by wrapping them in the language of rights or freedoms and by attaching them to Article II, or the Bill of Rights, of the Colorado Constitution. Both proposals adopt the political language of the initiatives' proponents and would insert it into the measure's title as a means to color the voter's perception of the initiative.
In fact, the proposed initiative at issue here grants no new "right" to Colorado citizens. As the majority opinion demonstrates, the initiative merely prevents the State of Colorado from adopting or enforcing certain specified laws or regulations. Maj. op. at 646-47.
Abundant evidence in the record before us demonstrates the political nature of the "right of health care choice" phrase. Television ads, advocacy websites, editorial writers, and political strategists opposed to the federal health care reform law all state that they support "health care choice," or some close variation on those words, and implicitly or explicitly argue that the federal law restricts individuals' health care options. Unfortunately, the title board in the present case failed to see through the illusion created by the proponents and included a political slogan or catch phrase in the ballot title.
In 1958 we ruled that "freedom to work," a phrase that "could" be used as a basis for a slogan, was impermissible. In 1994 we held that the phrases "consumer protection" and "open government" were impermissible because of their potential use as slogans. In re "Governmental Business", 875 P.2d 871. This legal standard allows for some speculation on the part of the title board and this court about language and its possible political use. But here we need not speculate at all about the potential of the phrase; the record strongly demonstrates that the "right of health care choice" is already a catch phrase and slogan. Just as "freedom to work" echoed a slogan of that initiative's political sponsors, "right of health care choice" echoes the slogans used in today's political contests by those who oppose the federal health care law and support this initiative.
For these reasons I respectfully dissent in part. I would strike the offending political slogan from the ballot title and allow the initiative to proceed.
I am authorized to say that Justice MARTINEZ joins in this concurrence and dissent.
Justice MARTINEZ, concurring in part and dissenting in part.
I agree with the majority that, pursuant to its understanding of the meaning of proposed *654 initiative # 45 ("Initiative # 45"), the initiative presents a single subject. I am writing separately, however, in order to note the significance of the majority's opinion for future determinations of a proposed initiative's compliance with the single subject rule. Although I approve of the majority's single subject analysis, I view it as a shift in our approach to evaluating single subject issues. In essence, the majority has established a new interpretive rule: where a proposed initiative contains a general principle followed by a specific application of that principle, we will confine the meaning of the general principle to the specific application that follows unless the language of the initiative makes clear that the general principle is intended to have a broader, independent meaning.
However, after having determined that Initiative # 45 is limited to the narrow subject of health insurance payment options, the majority then fails to recognize that the title set by the board suggests a broad subject of health care choice, and is therefore misleading. Rather than establishing that Initiative #45 only pertains to health care payment options, in accordance with the majority's understanding of the initiative, the language in the title implies that Initiative #45 also contains a broad right to health care choice that may operate outside the specific context of payment options. Furthermore, because I agree with the reasons articulated by the Chief Justice in her separate opinion that the phrase "right to health care choice" is an impermissible political slogan, I believe that Initiative # 45 should be returned to the title board to strike the phrase "right to health care choice" in order to make clear to voters that Initiative # 45 only pertains to the narrow issue of health care payment options. Therefore, I concur in the majority's holding that Initiative # 45 contains a single subject, but dissent from the majority's holdings that the title set by the title board is not misleading and that the phrase "right to health care choice" is not a political slogan.

Single Subject
The majority's single subject analysis is based in large part on its application of our holding in In re Title, Ballot Title, & Submission Clause for 2009-2010, #24, 218 P.3d 350 (Colo.2009), where we considered proposed initiatives similar to Initiative #45. Like Initiative # 45, the initiatives in In re # 24 consisted of a statement of a broad principle followed by a specific application of that principle. In that case, the proposed initiatives concerned the "right to vote by secret ballot." Id. at 352. We held that, although the initiative contained broad language regarding the right to vote by secret ballot, that right was confined by surrounding language to the specific context of employee representation elections. Id. at 354.
Likewise, in the present case, the majority holds that Initiative # 45's language concerning health care payment options confines the reach of the language referencing the broad right to health care choice. See maj. op. at 646-47. Although the majority's holding in the present case is consistent with our holding in In re #24, there are significant differences between Initiative # 45 and the initiatives we considered in In re # 24, such that the majority's analysis of Initiative # 45 represents an extension of the principles laid down in that case. Unlike in Initiative # 45, the broad right at issue in In re #24the right to vote by secret ballotwas surrounded on both sides by language establishing the specific application of that right. See 218 P.3d at 353-54. First, the broad language was preceded by the initiatives' narrow heading, "Elections for employee representation." Id. at 357 (Appendix A). Then, immediately following the broad language regarding the right to vote by secret ballot, the text of the initiative explained that "where state or federal law requires or permits elections or designations or authorizations of employee representation, the right of individuals to vote by secret ballot shall be guaranteed." Id. Thus, the broad language concerning the right to vote by secret ballot was "bookended by the heading on one side and a narrow statement of purpose on the other, both of which serve[d] to set it within a limited context." Id. at 353.
In contrast, Initiative # 45's heading only contains a reference to the broad "right to health care choice" without any hint as to the specific context of that right. Additionally, *655 the first sentence of Initiative # 45 continues to reference only the broad right, stating that "all persons shall have the right to health care choice." Finally, after consecutive references to the broad right to health care choice, Initiative # 45 clarifies the limited application of the right to health care payment options. Therefore, unlike the initiatives in In re # 24, Initiative # 45 elevates the broad right to health care choice to prominence as the heading and does not specify the limited application until the second sentence of the initiative's text.
Furthermore, in order to reach its conclusion that Initiative # 45's opening language did not create an independent right to health care choice, the majority confined its analysis to the plain meaning of the text of the initiative, thereby disregarding relevant testimony at the title board hearing. At the hearing, the proponents of Initiative # 45 explicitly stated that they intended the initiative to establish a broad right to health care choice in addition to preventing mandated health insurance and limitations on direct payments for health care. Thus, the majority has distanced itself from our precedent regarding the deference given to the intent of a proposal as expressed by its proponents, see In re Title, Ballot Title & Submission Clause, & Summary for 1999-2000 # 25, 974 P.2d 458, 465 (Colo.1999) (explaining that, in order to "assist potential proponents in implementing their right to initiate laws," deference must be given "to the intent of the proposal as expressed by its proponent"), in favor of an interpretative rule that confines the language setting forth broad rights to the specific application that follows such language. In my view, this is a considerable shift in the way we have analyzed proposed initiatives for compliance with the single subject rule.
Having noted the shift, I nonetheless favor this new interpretive rule, where broad principles are confined to the specific application set forth in the proposed initiative, because it will guide proponents in drafting and aid understanding of the reach of a proposed initiative. Specifically, proponents are now on notice that initiatives that include both a broad principle and a specific application will be confined to the specific application. As such, if proponents intend the broad principle to have independent meaning, they must make their intent clear in text of the initiative. Furthermore, the majority's rule serves one of the primary purposes of the single subject rule, which is to "apprise voters of the subject of each measure, so that surreptitious measures that could result in voter surprise or fraud are not placed on the ballot." In re Title, Ballot Title & Submission Clause, for 2007-2008, # 17 (New State Dep't & Elected Bd. for Envtl. Conservation), 172 P.3d 871, 873 (Colo.2007).
I also note that this interpretive rule does not prevent proponents from enacting initiatives that seek to establish broad principles. It simply requires that the language of the initiative clearly reflects the proponents' intentions to do so. Although it is true that the use of broad language carries with it a danger that such language will conceal an additional purpose or hidden subject, the mere inclusion of such language is not dispositive of multiple subjects. On the one hand, broad language did conceal a hidden purpose in In re Title & Ballot Title & Submission Clause for 2005-2006 # 55, 138 P.3d 273 (Colo.2006). In that case, we held that the broad language prohibiting the provision of "any non-emergency services" to persons not lawfully present in the United States concealed the proponent's intent to prohibit not only benefits to individuals in the nature of social or medical services, but all state administrative services as well. Id. at 281. Because the initiative lacked any specific application of the broad principle, it did not define or give context to the phrase "any non-emergency services." Id. Further, the proponents regarded the term as a comprehensive list of government operations too extensive to list, which was consistent with their understanding of the term. Id. at 280. Thus, the initiative concealed a hidden purpose to disrupt the operations of government and a voter could not be informed of the extensive consequences of his vote.
On the other hand, we considered initiatives containing very broad language in In re # 24, and held that the broad language, "right to vote by secret ballot," was placed into its proper context by reading it in conjunction *656 with the limiting language that surrounded it. 218 P.3d at 354-55. Similarly, Initiative #45's broad language concerning the right to health care choice derives its context from the limiting language that follows it. Thus, the rule the majority adopts does not prevent the inclusion of broad concepts, it merely prevents broad language, which could be narrowed when viewed in context, from concealing multiple subjects and hidden purposes. If it is clear from the language that the proponents intended the principle to operate broadly or independently from the specific applications identified in the initiative, then the next inquiry is whether the initiative encompasses more than a single subject. Because that was not the case here, I agree with the majority that Initiative # 45 contains a single subject.

Clear Title
The majority determines that Initiative # 45 pertains to the single subject of health care payment options and does not establish an overarching right to health care choice. See maj. op. at 646-47. However, having made this determination, the majority fails to notice that Initiative #45's title does not reflect the same singularity. Rather, the title board set a title that appears to reflect its understanding, based on what the proponents argued at the hearing, that Initiative # 45 was also intended to establish a broad right to health care choice in addition to preventing mandated health insurance or direct payments for lawful health care services. This is apparent in the title board's use of the phrase "in connection therewith." Rather than limiting the broad language regarding health care choice to only the narrow applications that follow it, this ambiguous transition may imply that the specific applications are but two of the many possible applications of the right to health care choice. Indeed, this is what proponents argued to the title board:
Board Member: But the first sentence [the right to health care choice] carries with it more than what follows, that there reallyyour intention as a proponent is to grant in the Bill of Rights a right to health care choice, whatever that may mean, and what follows are two applications, examples whatever, but there's more to the measure than what is in the second part.
Proponent: Absolutely. I can't imagine that not being clear by the words that we've used here.
Thus, when called upon to draft a title for Initiative # 45, it makes sense that the board included transition language that was intended to cue voters that the specific applications may only be two possibilities falling under the right to health care choice. As a consequence, a voter may vote in favor of Initiative #45, having concluded that the right to health care choice has meaning independent of the specific examples of mandated health insurance and direct payment. Indeed, a voter who sees the words "heath care" and "choice" together may very well assume that the initiative would protect a woman's right to choose an abortion and vote for or against the initiative on that basis, a possibility the board also discussed with the proponents.
However, because of the narrow reading of Initiative # 45's language, the majority has foreclosed the possibility that the initiative has any meaning beyond the two enumerated applications. Thus, although the title reflects the interpretation that both the title board and proponents agreed upon during the hearingthat the "right to health care choice" has independent meaningby reason of the broad language followed by the words "in connection therewith," the title is now inaccurate and may unfairly mislead voters in support for or against the initiative. See In re Title, Ballot Title & Submission Clause, & Summary For 1999-2000, No. 29, 972 P.2d 257, 266 (Colo.1999) (noting that the court's duty is to ensure that the title fairly reflects the proposed initiative "so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the board"). It is a significant misrepresentation for the title to imply to voters that Initiative # 45 will establish a new, broad right to health care choice when in fact it only pertains to health care payment options. See id. (explaining that reversal of the board's action is necessary if the title contains a "material and significant omission, misstatement, or misrepresentation"). Therefore, I would reverse the title *657 board's actions in this case and direct it to draft a new title that eliminates the broad phrase "right to health care choice."
Under some circumstances, it may be sufficient for the board to simply include better transition language, such as "specifically," that would make clear that the meaning of the broad language is confined to the specific application. However, such a remedy would not be sufficient in this case for several reasons. First, under the majority's reading of Initiative #45, the phrase "right to health care choice" has no independent meaning outside of the context of health care payment options. Furthermore, the phrase is not descriptive of the substance of the initiative. The generic phrase "right to health care choice" adds nothing to voter understanding of the purpose of the initiative because it does not actually describe the substance or operation of the initiative in any meaningful way. In light of this fact, and the substantial record evidence regarding the use of the phrase "right to health care choice" in the political arena, the phrase has the ring of a political slogan, a type of impermissible catch phrase. Catch phrases are "words that work to a proposal's favor without contributing to voter understanding." In re Title, Ballot Title & Submission Clause, & Summary for 1999-2000 # 258(A) (English Language Educ. in Public Schs.), 4 P.3d 1094, 1100 (Colo.2000). For these reasons, as well as the reasons articulated by the Chief Justice in her separate opinion, even if the board were to provide better transition language, failure to remove the phrase "right to health care choice" would nonetheless violate our rule against the use of political slogans in ballot titles. See id. Therefore, the phrase should be stricken from the title altogether.

Conclusion
I concur with the majority that, pursuant to its reading of Initiative # 45, the initiative contains only one subject. However, I dissent from the majority's conclusions that the title is not misleading and that the phrase "right to health care choice" is not a political slogan. Because the title set by the board does not reflect the singularity of the proposed initiative, and because the phrase "right to health care choice" is an impermissible political slogan, I would return the title to the board and direct it to strike the phrase from the title.
I am authorized to state that Chief Justice MULLARKEY joins in this concurrence and dissent.
NOTES
[1] The petitioners include Dr. Mark Earnest, Peter Leibig, Albert Schnellbacher, Jr., AARP Colorado, the Colorado Community Health Network, the Colorado Coalition for the Medically Underserved, and the Colorado Consumer Health Initiative.
[2] The title, ballot title and submission clause, and text of Initiative # 45 are attached as an Appendix to this opinion.
[3] It could be argued that the Title Board's use of the phrase "in connection therewith" renders the title misleading because the phrase could be interpreted to mean the initiative creates a broad right to health care choice beyond the specific provisions of the initiative. However, this bridging language is commonly used by the Title Board in setting titles, and we have frequently found titles using this language to be clear and fair. E.g., In re # 24, 218 P.3d at 357-58; In re # 62, 184 P.3d at 63; In re Title, Ballot Title & Submission Clause, & Summary for 1999-2000 # 235(a), 3 P.3d 1219, 1226 (Colo.2000); In re Title, Ballot Title & Submission Clause, & Summary for 1997-98 # 112 (Livestock Operations), 962 P.2d 255, 256 (Colo.1998). Furthermore, our task is not to consider whether the Title Board drafted the best possible title. In re # 62, 184 P.3d at 58. Instead, our review is limited to determining that the title "fairly reflect[s] the proposed initiative so that petition signers and voters will not be misled into support for or against a proposition by reason of the words used by the Board." Id. Here, the Title Board's use of the phrase "in connection therewith" will not mislead voters because the title read as a whole fairly and accuratelyand almost verbatim from the text of the initiative itselfdescribes Initiative # 45.
[4] The title reads "the right of all persons to health care choice," but the petitioners object to the language quoted above.
[5] We also note that the term "choice" has been used by various sides in the ongoing health care debate. See America's Affordable Health Choices Act of 2009, H.R. 3200, 111th Cong. (2009-10) (proposed federal health care reform bill); Affordable Health Choices Act, S. 1679, 111th Cong. (2009-10) (same); Health Freedom Act, H.B. 391, 60th Leg., 2d Reg. Sess. (Idaho 2010) (declaring the "right of all persons residing in the state of Idaho in choosing the mode of securing health care services"). Given the various uses made of the term "choice," we find it unlikely that the phrase will trigger an automatic favorable response.
[6] This case is distinguishable from Say v. Baker, 137 Colo. 155, 322 P.2d 317 (1958). In Say, we upheld the setting of a ballot title that excluded the phrase "freedom to work" in a ballot title of an initiative providing that union membership or nonmembership could not be a condition of employment. Id. at 156-60, 322 P.2d at 318-20. Unlike this case, the phrase "freedom to work" failed to accurately describe the underlying initiative, which dealt with the ability of an individual to choose to join or not to join a union. Here, as discussed above, the phrase "right of health care choice" accurately describes the purpose of Initiative # 45.
[*] Unofficially captioned "Health Care Choice" by legislative staff for tracking purposes. Such caption is not part of the titles set by the Board.